[S. F. No. 7590.   Department One.—December 7, 1917.]

## E. AIGELTINGER, INC., Appellant, v. G. W. BURKE et al., Respondents.

CORPORATIONS—AGENCY—AGENT FOR CORPORATION—PROOF OF AUTHORITY —CIRCUMSTANTIAL EVIDENCE.—The authority of a corporate agent need not be shown by resolution or express declaration of the directors, but may be proved by circumstantial evidence.

ID.—EVIDENCE OF AGENT'S AUTHORITY — CHARGE AND MANAGEMENT— KNOWLEDGE OF DIRECTORS OR MEMBERS.—Where one has the actual charge and management of the general business of a corporation

with the knowledge of the members or directors, this is sufficient evidence of authority, and the company will be bound by his contracts on their behalf within the apparent scope of the business intrusted to him.

ID.—EMPLOYMENT BY CORPORATE AGENT—LIABILITY OF CORPORATION.— A corporation which suffers appearances to exist, and its officers and agents to act, so as to give one employed by them reason to believe that he is employed by the company, becomes liable as employer to such person to pay for services rendered.

ID.—CONTRACT—RATIFICATION BY ACCEPTING BENEFITS.—A corporation, knowingly accepting the benefit of a contract made in its behalf, in effect ratifies it, and cannot refuse to be bound by its terms and conditions.

ID.—MECHANIC'S LIEN — SUBCONTRACT — MATERIALMAN — RELEASE OF OWNER AND ORIGINAL CONTRACTOR—ESTOPPEL.—Evidence examined and found sufficient to sustain a finding that one who had furnished materials to a subcontractor was estopped from asserting a lien therefor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Wal. J. Tuska, for Appellant.

Francis V. Keesling, and C. A. S. Frost, for Respondents.

SHAW, J.—This is an action to foreclose a lien for the value of materials alleged to have been furnished by the plaintiff to G. W. Burke Co., a corporation, subcontractor under a corporation known as Lindgren Co., who was the original contractor for the erection of a building for the Olympic Club in San Francisco. The materials were furnished for use, and were used, in said building, and in the completion of the subcontract of said G. W. Burke Co. Issues were formed, a trial was had, and findings and judgment were given in favor of the defendant Lindgren Co. The plaintiff appeals from the judgment.

The only controversy upon this appeal is upon the question whether or not, by reason of a certain agreement executed by E. Aigeltinger, G. W. Burke Co., and Lindgren Co., on October 13, 1911, and the circumstances under which said

agreement was made and carried out, the Aigeltinger Company is estopped from claiming a lien on the property. It is admitted that the notice of lien was duly filed within the time allowed by law, and that the amount claimed therein was justly due from G. W. Burke Co. to the Aigeltinger Company for materials furnished by the latter to the former as subcontractor, for use in said building.

The subcontract of the Burke Co. with the Lindgren Co., under which the materials were furnished, was executed on February 14, 1911. Work was performed thereunder and a large part thereof was completed prior to October 13, 1911. At that time the Burke Co. and Aigeltinger applied to Lindgren Co. for assistance in carrying out the subcontract, and in consequence of said application the contract of October 13, 1911, was executed. The findings of the court relating to the subject of the estoppel and the effect of the last-mentioned contract were somewhat elaborate and need to be stated in detail.

Aigeltinger was at all times the president of the Aigeltinger Co. and exercised entire control of its business and affairs. The company adopted and used the name of E. Aigeltinger as its corporate name. It permitted him to mingle his own funds and the corporate funds, and otherwise to commingle his personal identity and affairs with the corporate business. The Lindgren Co. had no knowledge, prior to the filing of the plaintiff's claim of lien herein, that E. Aigeltinger was a corporation, or that there was a corporation by the name of "E. Aigeltinger, Inc.," but, on the contrary, knew one E. Aigeltinger as a person and as a friend of W. G. Burke, president of the Burke Co., and as bondsman of the said company on said subcontract, and as a person financially interested as a partner with said Burke Co., in said subcontract, but had no knowledge or information that the materials for which plaintiff's lien is claimed were furnished or sold by E. Aigeltinger, Inc., as a corporation, or as distinct from E. Aigeltinger as a person. The plaintiff during all this time made no effort to distinguish its identity in the minds of Lindgren Co.'s officers and agents from that of E. Aigeltinger personally. With the knowledge and acquiescence of the plaintiff corporation, E. Aigeltinger became financially interested in said subcontract at the time it was made, and with the consent of the plaintiff he mingled the moneys of the cor-

poration with his own in paying for labor performed on said subcontract, all of which money was kept in a bank account in the name of said plaintiff corporation. Having no money with which to pay for the labor and material necessary to complete the performance of the subcontract, Aigeltinger and Burke applied to the Lindgren Company for financial assistance to enable them to complete the same. The Lindgren Co. agreed to this proposal and thereupon the agreement of October 13, 1911, was executed. As its effect is the main question in controversy, it is necessary to set it out in full. It is as follows:

"This Memorandum of Agreement, made this the 13th day of October, 1911, by and between The G. W. Burke Co., a partnership, and E. Aigeltinger, all of the City and County of San Francisco, California, parties of the first part, and Lindgren Company, a corporation organized under the laws of the State of California, the party of the second part:

"Witnesseth, that whereas, the party of the second part is the General Contractor for the erection of the Olympic Club Building, now being built on the corner of Post & Mason Streets, in San Francisco, California, and the parties of the first part are jointly interested in a contract made by the G. W. Burke Co., for the plastering work on said building, that the parties hereto agree each with the other as follows: The party of the second part agrees that it will pay for all the labor and materials necessary for the completion of the said plastering contract from and after this date that may be furnished and provided by the parties of the first part including the labor furnished during the week ending on Saturday the 14th inst., and that it will reimburse itself for all moneys so paid out for labor and materials out of the money due and to become due to the parties of the first part on said plastering contract, and out of any balance that may remain after all bills as above mentioned have been paid, to pay, first, to G. W. Burke Co., a sum equalling eight dollars per day for the time actually spent on the plastering work by G. W. Burke, and second, to pay any balance that may then remain, in equal portions to the G. W. Burke Co., and E. Aigeltinger.

"The parties of the first part agree that they will complete the plastering contract above referred to, and that upon the completion and acceptance of the work done under such con-

tract they will release the party of the second part and the owner of the building, the Olympic Club, from any and all liens or claims for labor and materials furnished by them, and further agree that they will pay to the party of the second part interest at the rate of eight per cent per annum for all moneys advanced by it to pay for labor and materials for and during the time it shall be advanced before the money so advanced shall have been returned to said party of the second part from the payments due to said parties of the second part on account of said contract.

"In witness whereof, the parties hereto have affixed their signatures this the 13th day of October, 1911.

> "G. W. Burke Co.,
>> "By G. W. Burke, Pres.
> "E. Aigeltinger,
> "Lindgren Company,
>> "By A. F. Lindgren,
>>> "Vice-President."

The Burke Co. was not a partnership, as recited in said agreement, but was a corporation. The recital in the agreement that the Burke Co. and Aigeltinger were jointly interested in the contract of the Burke Co. for the plastering work on the Olympic Club building referred to the subcontract involved herein. Aigeltinger failed to inform Lindgren Co. of the claim of E. Aigeltinger, Inc., against the Burke Co. for materials furnished for use in the building, or of the existence of the plaintiff as a corporation distinct and separate from himself. But with intent to mislead Lingren Co., and while exercising control of the business and affairs of the plaintiff corporation, E. Aigeltinger represented to Lindgren Co. that said account against the Burke Co. for said materials was held and owned and that said materials were sold to said Burke Co. by E. Aigeltinger, personally, and that if any rights to lien therefor should arise, they would belong to said E. Aigeltinger personally. The Lindgren Co. believed said representations to be true, and in reliance thereon entered into the said agreement of October 13, 1911, and thereafter fully performed its part thereof. It would not have entered into the said agreement, or made further payments to the Burke Co. under the said plastering contract, if it had known that the plaintiff, as distinct from Aigeltinger personally, was the real owner of the demand against the Burke Co. for said

CLXXVI Cal.—40

materials. The plaintiff was jointly interested in the plastering contract with said Aigeltinger and said Burke Co., and with full knowledge of all the facts concerning the agreement of October 13, 1911, accepted the full benefit of said agreement and of the performance thereof by Lindgren Co. The court also found that at the time of making said agreement of October 13, 1911, it was understood and agreed by and between the persons who accepted the same on behalf of the respective parties that all liens or claims for labor or material used, and to be used, in the performance of the said subcontract, would be released so far as the Olympic Club and Lindgren Co. were concerned. This we take to have been intended as a statement of the true meaning and legal effect of the written agreement, and not as a statement of an oral agreement separate from the writing.

The answer sets up the defense based upon the agreement of October 13, 1911, in two counts. The first count alleged that the plaintiff corporation, by E. Aigeltinger, its agent, executed said agreement as one of the parties of the first part. The second count alleged the facts in accordance with the findings above set forth, with the additional allegation that all the acts and statements of E. Aigeltinger in regard to the matter were performed and made by him "as agent of and for the benefit of plaintiff," and that plaintiff knew of and authorized the same. The court made no explicit finding upon this additional allegation, nor upon the aforesaid allegation of the first count.

It would have made the case clearer if the court had found as a fact that in all his proceedings as heretofore related, Aigeltinger was acting as agent for the plaintiff and in its behalf, and that he was thereunto duly authorized by the plaintiff. The authority of a corporate agent need not be shown by a resolution or other express declaration of the directors. Like other facts, it may be proven by circumstantial evidence. "Where one has the actual charge and management of the general business of a corporation, with the knowledge of the members, or the directors, this is sufficient evidence of authority, and the company will be bound by his contracts, made on their behalf, within the apparent scope of the business intrusted to him. . . . A corporation which suffers appearances to exist, and its officers and agents to so act, as to give one employed by such officers and agents

reason to believe that he is employed by the company, becomes liable to such person as his (its) employee to pay for the services rendered.'' (*Crowley* v. *Genesee M. Co.*, 55 Cal. 276; *Goodwin* v. *Union Screw Co.*, 34 N. H. 378; *Bates* v. *Coronado Beach Co.*, 109 Cal. 162, [41 Pac. 855]; *Phillips* v. *Sanger L. Co.*, 130 Cal. 434, [62 Pac. 749]; *Curtin* v. *Salmon River etc. Ditch Co.*, 141 Cal. 311, [99 Am. St. Rep. 75, 74 Pac. 851].)   There was ample evidence of the character indicated in the above quotation to prove the facts alleged in the answer as above stated.   But the same results follow from the allegation and finding that the plaintiff, with full knowledge of all the facts concerning the agreement of October 13, 1911, accepted the full benefits thereof, and of the performance thereof by Lindgren Co.   In compliance with that agreement, Lindgren Co. paid the money due for the labor and materials required to continue the work of the subcontract after October 13, 1911, until the same was fully completed.   The plaintiff was interested in said subcontract and these payments were a benefit to it.   One cannot knowingly accept the benefits of a contract made in its behalf, or in which it is interested, and refuse to be bound by its terms and conditions.   The plaintiff, therefore, in effect, ratified the agreement of October 13, 1911, and is bound thereby. (*Bates* v. *Coronado Beach Co., supra; Phillips* v. *Sanger L. Co., supra; Curtin* v. *Salmon River etc. Co., supra.*)

Plaintiff earnestly insists that the clause of the agreement by Aigeltinger and the Burke Co. purporting to release Lindgren Co. and the Olympic Club ''from any and all liens for labor and material furnished by them,'' meaning Aigeltinger and the Burke Co., refers to labor and materials thereafter to be furnished by them in completing the subcontract, and does not include any lien for the materials previously furnished to the Burke Co. by the Aigeltinger Co.   We think it is manifest that it refers to and includes the materials and labor previously furnished for the performance of the subcontract. According to the terms of the agreement, Lindgren Co. was to pay for all materials and labor subsequently done and furnished to complete the subcontract.   It was to be repaid by Burke out of moneys to become due on the subcontract.   This implies, of course, that the Burke Co. was to be fully paid for the labor thereon.   The materials would be paid by Lindgren Co., and no other person would have a lien therefor.

Neither Aigeltinger nor the Burke Co. could have any claim or lien on account thereof. The reference in the agreement must have been to a lien which had a possibility of existence, and the lien for the bill of the Aigeltinger Company for materials previously furnished to the Burke Co. was the only one that could answer that description.

It is claimed that the representations of Aigeltinger found to have been made, as above stated, were not proven by any evidence. There was no express statement by him to Lindgren Co. that he had personally furnished the materials to Burke Co., or that he, personally, was the owner of the demand and of the right to a lien therefor. But his entire course of conduct and conversation in the affair, from beginning to end, amounted to a representation to that effect, and was such that the Lindgren Co. might with good reason have believed that to be the fact. It is also implied by the terms of the agreement itself. The finding is, therefore, not without substantial support in the evidence.

It is also claimed that the contract for plastering work on the building, referred to in the agreement of October, 1911, as the contract in which Aigeltinger and the Burke Co. were jointly interested, is not the subcontract under which the Aigeltinger Company supplied the materials to the Burke Co. There is no merit in this claim. The contract of the Burke Co. was the only contract for the plastering of the building. The court found that Aigeltinger was personally interested as a partner therein with the Burke Co. This being the case, it would be true, as the recital states, that the two were jointly interested therein. The fact was that Aigeltinger had made an agreement with Burke Co., whereby in consideration of Aigeltinger's assistance in the performance of the contract, financial and otherwise, he was to have a part of the profits thereof, and it was shown by abundant evidence that in making this agreement and obtaining this interest Aigeltinger was acting in behalf of the plaintiff corporation, and that the interest which he thereby acquired in the subcontract was in equity the property of the plaintiff corporation. The court found that the plaintiff was interested in said subcontract, and this finding is sustained by the evidence. From all these circumstances it is manifest that the reference could have been to no other contract than the subcontract of Burke Co. for the lathing and plastering of the building.

We are of the opinion that the estoppel against the plaintiff was established by the facts found, and that the findings are sustained by the evidence. Appellant's counsel presents a number of minor points as to the relevancy and competency of certain evidence. All of these points are either covered by what we have said or they are too trifling to deserve notice.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.