[Civ. No. 3857. Third Appellate District.—March 19, 1930.]

J. ANDREW COOK, Respondent, v. CENTRAL MENDO-CINO COUNTY POWER COMPANY (a Corporation), Appellant.

Frank W. Taft and Mannon & Brazier for Appellant.

Clifton Hildebrand, James A. Myers and Granville T. Burke for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment against the defendant for the recovery of the sum of $5,250 principal, together with interest thereon from the date of the entry of judgment on a promissory note dated September 22, 1923. From this judgment the defendant appeals.

At the conclusion of the trial the court made and filed its findings, which we summarize as follows:

That on or about the twenty-second day of September, 1923, the defendant made, executed and delivered to the plaintiff its promissory note, in writing, whereby it promised and agreed to pay to the plaintiff, ten days after date, without interest, the sum of $5,250. The note contained the usual covenants as to payment of attorneys' fees and costs in the event of suit. The note was signed, "Central Mendocino County Power Co., Frank W. Taft, President. H. W. Cook, Treasurer." The seal of the corporation was not attached. That at the time of the execution of this note, no previous resolution or authorization was passed or had by the directors of the corporation, or as stated in the finding—"the execution of the aforesaid note was not formally authorized by the Board of Directors of the defendant corporation, in that no resolution was passed by the Board of Directors formally authorizing the execution of the note." The by-laws of the corporation contained no provision authorizing the execution of notes by the president and treasurer. That subsequent to the execution of said note, and on or about the eighteenth day of February, 1924, at a time when the plaintiff was about to institute a suit against the defendant company on the promissory note involved in this action, in consideration of the plaintiffs agreeing to forbear bringing suit until the fifteenth day of May, 1924, the defendant company executed a forbearance agreement in the following words and figures, to wit:

"In consideration of the forebearance and agreement to forebear until on or after the 15th day of May, 1924, on the part of J. Andrew Cook, his heirs, executors, administrators or assigns, to bring any suit or action for the collection of that certain promissory note in his favor, dated September .22, 1923, in the principal sum of $5,250.00, made, executed and delivered by the undersigned, Central Mendocino County Power Company, to said J. Andrew Cook, or order, and of his agreement to extend and the extension of the maturity, or due date, of said note to said 15th day of May, 1924, Central Mendocino County Power Company hereby agrees and promises to pay interest on said principal sum of $5,250.00 indebtedness evidenced by said note at the rate of eight (8%) per cent per annum from the 3rd day

of October, 1923, shall be due and payable on said 15th day of May, 1924, and said quarterly installments of interest shall be thereafter due and payable on the 3rd day of June, September, December and March in each and every year until the whole sum of said principal and interest shall be fully paid.

"In Witness Whereof, said Central Mendocino County Power Company has caused its corporate name to be hereto subscribed and its corporate seal hereunto affixed by its President and Treasurer, and duly authorized this 18th day of February, 1924, by resolution of the Board of Directors.

"CENTRAL MENDOCINO COUNTY POWER CO.

"FRANK W. TAFT, President.

"(Corporate Seal)      H. W. COOK, Treasurer."

That the board of directors of the defendant corporation, at the time of the execution of the forbearance instrument, passed a resolution authorizing the execution of the same, and also, in addition, ratifying the promissory note involved in this action; that by so ratifying the aforesaid promissory note, the same became a binding obligation of the corporation. That at the time of the execution of the note herein referred to, to wit, on the twenty-second day of September, 1923, the plaintiff advanced to the defendant the sum of $5,000, and that the defendant company received the benefit of said money, and that the corporation is now estopped from questioning the authority of the president and the treasurer to execute said note on behalf of the corporation; that defendant, through its directors and officers, received the benefit of the plaintiff's money, with full knowledge of what the president and treasurer had done; that said note was not paid through any arrangement with Mrs. Amy Reque Long, had and made with Mrs. Lillian Cook, in relation to the purchase of the shares of capital stock in said corporation. The court further found that said promissory note was unpaid. Judgment was accordingly entered in favor of the plaintiff.

The record shows that at the time of the organization of the defendant corporation, the promoters pooled 63,242 shares of the common stock thereof, this stock all being issued in the name of one H. W. Cook, the corporation being organized by Edward Morris, H. W. Cook and Frank W. Taft, as principal promoters. Taft was elected presi-

dent, and Morris, vice-president and general manager. There were two other persons elected as directors, but the ones named apparently controlled and managed the business of the corporation. It appears from the record that Mrs. Lillian Cook and some others advanced considerable money to the defendant corporation, and were credited with an equitable interest in what was called the ''pooled'' stock, being the shares of stock to which we have heretofore referred, the record showing that the stock so pooled was for the purpose of enabling the corporation to more easily finance its enterprises.

The trial court, preceding the filing of its findings, delivered its opinion in writing, setting forth the facts surrounding the execution of the note sued upon, from which we take the following: ''The defendant corporation was in great financial difficulties; Frank W. Taft was president; Edward Morris was the vice-president and general manager; H. W. Cook, a brother of plaintiff, was acting secretary and treasurer. Mr. H. W. Cook and his mother, Lillian Cook, had invested considerable money in the defendant company. The company had issued checks on the Bank of Willits in payment of its pressing obligations to the amount of between $4,000 and $5,000, and there were no funds in the bank to meet these checks. Mr. Morris was endeavoring by all means possible to obtain money to meet these pressing obligations. Mr. H. W. Cook was asked by Mr. Morris if a loan could be secured from the plaintiff; the matter was taken up with plaintiff and subsequently plaintiff, on September 21, 1923, gave his check to defendant, Central Mendocino County Power Company, for $2,000, which was cashed by the defendant and deposited in the Bank of Willits to the account of the defendant corporation. On September 22, 1923, plaintiff deposited with the United Bank & Trust Company, of San Francisco, an additional $3,000, with instructions to transmit the same by wire to the Bank of Willits for the credit of defendant. This was done and this money was also deposited in the Bank of Willits to the credit of defendant.''

As we have stated, on February 18, 1924, the forbearance agreement was executed by the corporation and delivered to the plaintiff. By the terms of this forbearance agreement, the corporation promised and agreed to pay to the plaintiff

the sum of $5,250 with interest thereon at the rate of eight per cent per annum. The agreement concludes as follows: "In Witness Whereof, the said Central Mendocino County Power Company has caused its corporate name to be hereto subscribed, and its corporate seal hereunto affixed, by its president and treasurer, and duly authorized this 18th day of February, 1924, by resolution of the Board of Directors." A copy of the resolution of the board of directors was also set forth in the transcript, from which it appears that the board of directors of the corporation, on the day in question, adopted a resolution authorizing the execution of the for-bearance instrument to which we have just referred. A copy of this resolution was furnished the plaintiff, bearing the attestation of the secretary thereof as follows:

"The above resolution, adopted by the Board of Directors of the Central Mendocino County Power Company, was ordered spread upon the minutes of a special meeting of the company, held at Willits, California, on February 18, 1924.

"(Corporate Seal.)    Attest:   H. W. Cook, Secretary."

On the same date, the eighteenth day of February, 1924, the general manager of the corporation, Edward Morris, wrote to the plaintiff inclosing the papers to which we have referred, and stating therein: "This being a company note, it is in no way involved in the Watson transaction, and is not jeopardized by the situation that we find ourselves in." This apparently refers to a note executed and bearing interest as of the original date, maturing May 15, 1924, obviously intended to take the place of the original note. ▆▆ As to whether such a meeting of the corporation was held, as herein referred to, the testimony is in conflict, both Morris and Taft testifying that there was no such meeting, notwith-standing the fact that both Morris and Taft had written letters stating in substance that such a meeting was held. The secretary testified that there was such a meeting. The court found in accordance with the testimony of the secre-tary, and we think the testimony sufficient to support the conclusion of the trial court in this particular.

▆▆ On behalf of the appellant it is contended that the note was not an obligation of the company, but that it was intended as an advancement by the plaintiff for an equity in the pooled stock. As stated in the opinion of the trial

court, there was some conversation in relation to the plaintiff advancing $5,000, and accepting an equity in the pool herein referred to, but it is further stated in the opinion of the trial court that the plaintiff stated that the money was a loan to the company, and that he did not advance the money as the purchase of an equity in the pooled stock. The finding that the money was loaned to and used by the company, is supported by sufficient testimony, although there is a conflict upon this issue. Being supported, the fact of conflicting testimony is immaterial here. ■ Another principle also comes to the aid of the finding of the court in view of the fact that the corporation had and used the money advanced by the plaintiff, as herein stated. In this particular we quote the language of the trial court: "I am also of the opinion that the defendant is estopped, by the fact that it received the benefit of the money, from now raising the question that the president and treasurer had no authority to contract on behalf of the corporation. The general principle of estoppel is that having received and enjoyed, or obtained the benefit of the transaction, with knowledge, the corporation cannot repudiate liability and escape the burdens on the ground that it was not authorized," etc. (Citing 6 Cal. Jur., p. 1129.) The opinion of the court also refers to other facts disclosed by the record, and this we may also quote: "It is also in evidence, and not disputed, that on other occasions the president and treasurer had borrowed money and executed notes on behalf of the corporation, with the apparent approval and acquiescence of the Board of Directors." ■ That a corporation may ratify the contract of its officers, or accept benefits of a contract made by its president or other officer, is well established. (*Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 24 [206 Pac. 653]; *Commercial S. Co.* v. *Modesto Drug Co.*, 43 Cal. App. 174 [184 Pac. 964]; *Aigeltinger, Inc.*, v. *Burke*, 176 Cal. 621 [169 Pac. 373]; 6 Cal. Jur., p. 1129; Cook on Corporations, 8th ed., sec. 713a, p. 2951; *Porter* v. *Lassen County etc. Co.*, 127 Cal. 261 [59 Pac. 563]; 6 Cal. Jur., p. 1122.) Other cases might be cited, but we deem the foregoing sufficient. The fact that the money is used by the corporation for its purposes and benefits is a leading factor in supporting the conclusion of the trial court that the instrument sued

upon is a corporate obligation. (*San Joaquin Valley Bank* v. *Gate City Oil Co. et al.*, 170 Cal. 250 [149 Pac. 557].)

■ It is contended on the part of the appellant that in the sale of the pooled stock to Mrs. Long, as hereinbefore referred to, the money advanced by the plaintiff and the note issued by the company, as herein referred to, was considered as money representing the amount due the plaintiff, paid to one Lillian Cook. As stated by the trial court in its opinion, it appears from the transcript that such an arrangement was considered by other parties than the plaintiff herein, but as also stated by the trial court, in the final escrow agreements entered into terminating in the sale and purchase of the pooled stock, no mention is made of the claim of the plaintiff.

We may further add that the transcript is entirely silent as to any agreement on the part of the plaintiff to accept payment from any person other than the corporation, nor does it appear from the transcript that any conversation or negotiations were ever had with the plaintiff relative to any such arrangement. The trial court in this particular, in its opinion, uses the following language which we adopt: "I do not doubt that during the preliminary negotiations between Mrs. Long and Mr. Robinson, the attorney for Lillian Cook, the settlement of the J. Andrew Cook note involved in this action was discussed, and also that Mrs. Long desired that said note be included in the purchase and settlement of the Cook interests, but suffice it to say that said note was not included in the final settlement. All the evidence points unerringly to this conclusion—the J. Andrew Cook note was not surrendered; the case at bar, which was then pending in Alameda County, was not dismissed; no release was produced from J. Andrew Cook; the J. Andrew Cook note was not mentioned in the final escrow instructions given to the American Trust Company; Mrs. Long accepted the terms contained in the escrow instructions, and completed the purchase without demanding that the J. Andrew Cook note be included; J. Andrew Cook was in no way a party or interested in Mrs. Long's negotiations to purchase the Lillian Cook stock. In the face of all these undisputed facts, it is impossible for me to find that Mrs. Long paid this J. Andrew Cook note."

■ Referring again to the resolution approving and ratifying the action of the president and treasurer of the company in giving the note sued upon, it is contended on the part of the appellant that the resolution, as heretofore stated, was never adopted, and points to the fact that the resolution does not actually appear in the minutes of the corporation. This, however, is explained by the secretary in stating that the resolution was kept off the minutes at the request of Morris, who, by the way, was the manager of the corporation, in order that the source from which the corporation was drawing its finances might not be disclosed, and it was not desired that other interests should learn of the transaction.

There being sufficient testimony in the record to support the findings of the trial court, it would serve no useful purpose to review the authorities cited by the appellant, based upon its contentions as to what the facts are, or as to what the findings of the trial court should have been.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 15, 1930.