[Civ. No. 5241.  First Appellate District, Division Two.—November 24, 1925.]

JOHN ZENOS, Respondent, v. BRITTEN–COOK LAND & LIVESTOCK COMPANY (a Corporation) et al., Appellants.

[1] PLEADING — ACTION AGAINST CORPORATION — DUE EXECUTION OF MORTGAGE — INSUFFICIENT DENIAL. — In an action to foreclose a mortgage given to secure the payment of a promissory note, where the complaint is verified and the execution of the promissory note and the mortgage by the corporation defendant are specifically pleaded, such facts are presumably within the knowledge of the corporation and require a positive denial, and an answer by the corporation denying such allegations on information and belief only is sham and frivolous and admits the execution of the note and mortgage.

[2] ID.—PRESUMPTIVE KNOWLEDGE — DENIAL UPON INFORMATION AND BELIEF.—When the facts alleged in a verified complaint are presumptively within the knowledge of the defendant he must answer positively, and an answer upon information and belief only should be treated as an evasion and an admission of the facts alleged in the complaint.

[3] ID.—AUTHORITY OF CORPORATE OFFICERS—EXECUTION OF INSTRUMENTS UNDER SEAL—BURDEN OF PROOF.—In an action against a corporation to foreclose a mortgage given to secure the payment of a promissory note, where the pleadings are treated as being sufficient to raise an issue as to the due execution of the note and mortgage, and it is shown that said instruments were executed under seal by the president and secretary, respectively, of the corporation, the burden of proof of want of authorization upon the part of said officers to execute said instruments is upon the defendant.

[4] CORPORATIONS—OWNERSHIP OF STOCK BY TWO INDIVIDUALS—SEPARATE ENTITIES—EQUITY.—Where two individuals are the owners of all the corporate stock and in conjunction use the corporation merely as an instrumentality through which they transact their business, the separate entities will be disregarded when necessary to prevent fraud and to protect the rights of third persons.

[5] ID.—OSTENSIBLE AGENCY—ESTOPPEL.—When a corporation suffers its officers to have actual charge and management of the business of the corporation and to so act as to lead those having dealings with the corporation to believe that they are acting under proper authority of the corporation, and this conduct continues for a long period of time with the full knowledge and consent of the corporation, it thereupon becomes bound by the acts of its officers done under its name.

[6] ID.—RATIFICATION—ESTOPPEL.—Generally speaking, ratification applies to a formal declaration of approval of the act of another by the party sought to be bound, whereas estoppel is where a party is bound by his own act, but the legal effect is the same and it can matter little by what name it be called.

[7] ID.—PLEADING—ESTOPPEL—EVIDENCE.—In an action to foreclose a mortgage given to secure the payment of a promissory note, both of which instruments are alleged to have been executed by the defendant corporation, it is not necessary for the plaintiff to expressly plead either ratification or estoppel, but when the defense

2.    See 21 Cal. Jur. 149; 21 R. C. L. 458.
3.    See 6 Cal. Jur. 1095.
4.    See 6 Cal. Jur. 591; 7 R. C. L. 27.
5.    See 6 Cal. Jur. 1099.
6.    See 10 Cal. Jur. 626.
7.    See 10 Cal. Jur. 655; 10 R. C. L. 845.

of want of execution is interposed the plaintiff can then show acts constituting an estoppel without further pleading.

[8] ID.—ACTION TO FORECLOSE MORTGAGE—ESTOPPEL TO DENY EXECUTION—FINDINGS—EVIDENCE—JUDGMENT—APPEAL.—In such action, where the trial court finds that the defendant corporation, by and through its president and secretary, executed the note and mortgage in question under seal upon a specified date and paid the interest thereon for more than two years, that the note was given in part payment of the land upon which the mortgage was a lien, and that the conveyance thereof to the corporation was a part of the same transaction, but the court does not draw from these facts the conclusion that the corporation is thereby estopped from denying the note and mortgage, and all the evidence shows without conflict the facts from which an estoppel should arise, and it is evident that if any further findings of fact or conclusions of law were made they too must be favorable to plaintiff, the failure of the court to make specific findings in favor of plaintiff upon the issue of estoppel will not call for a reversal of the judgment by the appellate court.

---

(1) 31 Cyc., p. 201, n. 16, p. 209, n. 83.    (2) 31 Cyc., p. 209, n. 83. (3) 14a C. J., p. 396, n. 15, p. 397, n. 16, 17.    (4) 14 C. J., p. 61, n. 78.    (5) 14a C. J., p. 368, n. 40, p. 387, n. 40.    (6) 21 C. J., p. 1115, n. 57.    (7) 21 C. J., p. 1244, n. 6, p. 1245, n. 10, p. 1253, n. 98.    (8) 4 C. J., p. 1060, n. 20; 14a C. J., p. 387, n. 40, p. 391, n. 56.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

George E. Brannan, Lee Walker and Leo B. Ward for Appellants.

J. S. Larew and D. B. Roberts for Respondent.

NOURSE, J.—Plaintiff sued to foreclose a mortgage for $5,000 on certain land located in the county of Imperial. The cause was tried before the court and resulted in a judgment in favor of the plaintiff, from which the defendant appeals upon a record prepared under section 953a of the Code of Civil Procedure.

The facts of the case are that on July 1, 1917, the note and mortgage in suit were executed under seal by Britten and Cook, the president and secretary, respectively, of

defendant corporation, in the city of Chicago, where the defendant corporation had its principal place of business. The mortgage was acknowledged before a notary public in the city of Chicago by said officers on July 27, 1917. At the same time and as a part of the same transaction the plaintiff sold and conveyed to the defendant corporation the land described in the mortgage, the note was given as part payment of the purchase price thereof, and the mortgage was given to secure the same. This deed of conveyance was duly recorded and transmitted to the defendant corporation in the city of Chicago. When these documents were executed by the president and secretary of the corporation these officers constituted a majority of its board of directors and owned 7,000 of the 7,500 shares of the stock of the corporation, this being the full number of shares which had been issued and held by stockholders of the corporation at the time. The remaining 500 shares of the issued capital stock were held by one Kilgour, who was an employee of the corporation in the capacity of a sales agent. Prior to the execution of the note and mortgage these three directors, in meeting assembled, formally approved a written contract with O. E. Cook as general manager of the corporation. This contract, among other things, authorized Cook, who was also the secretary of the corporation and the one who executed the mortgage in suit, to supervise the purchase of all land and "to generally supervise all of the activities of the company and to have full charge of all of the details with full power to act on the premises in any manner which in his judgment may be to the best interests of the company, with the exception that all checks shall be drawn in the regular way, and all documents under seal shall be executed in the regular way." The corporate seal which was impressed upon the document was the official seal of the corporation which had been duly adopted at the first meeting of the board of directors. The land in question was a single tract of 164 acres, the total purchase price of which was $27,000. The defendant corporation paid a portion of the purchase price in cash, assumed an obligation in the sum of $9,500, which was secured by a mortgage on a portion of the tract and executed a second mortgage to the plaintiff in the sum of $2,500, which the defendant subsequently paid. Inter-

est on the note in suit was paid by the defendant totaling $615.86, the last payment of which was on the 1st of October, 1919. It further appears that the defendant corporation was engaged in the business of raising hogs for the market and that soon after the conveyance of the land involved herein the defendant, under the direction of its secretary and general manager, commenced to improve and develop the land and to devote it to the purposes of the corporation's business. On numerous occasions after this conveyance and prior to the commencement of this action the directors of the corporation were sent from the Chicago office to Imperial County to inspect the land and properties of the corporation and on all occasions expressed their approval of the acts of its secretary and general manager, and in some instances carried the expressions of approval into formal resolutions adopted by both the board of directors and by the stockholders in meeting assembled. Prior to the commencement of the action the corporation suffered financial difficulties. A reorganization was had and the new organization, though not rescinding the transaction or offering to reconvey the property to the plaintiff, repudiated the obligation on the ground that it had not been executed under special authorization of its board of directors.

[1] On this appeal the appellant urges that the judgment must be reversed because the evidence fails to support the finding of due execution of the mortgage and because the trial court, not having specifically found on the issues of ratification or estoppel, the respondent cannot avail himself of that answer to the appellant's defense of want of authority to execute the mortgage. The issue of due execution of the mortgage was not properly brought before the trial court. The complaint is in the usual form of a suit to foreclose a mortgage. The execution of the promissory note and of the mortgage to secure its payment was specifically pleaded. The answer did not directly deny any of the material allegations of the complaint. The defendant denied on information and belief only that the corporation executed either the note or the mortgage and denied on information and belief also that the corporation had authorized the execution of either the note or the mortgage by resolution of its board of directors or otherwise

or that the corporation had ratified the execution or delivery thereof. These denials were followed by the pleading that the defendant corporation was informed and believed and upon such information and belief alleged that no interest had been paid by the defendant corporation upon the alleged indebtedness. The answer is plainly sham and frivolous. All the facts alleged in the complaint and which were denied for lack of information and belief were facts which were presumably within the knowledge of the corporation and required a positive denial in the answer. The books and files of the corporation were all available to the pleader and it had every opportunity to ascertain the truth of the facts alleged in the complaint prior to the filing of the answer, or at least in time to enable it to file an amended answer before the trial of the cause which was held more than one year after the original answer was filed. [2] When the facts alleged in a verified complaint are presumptively within the knowledge of the defendant he must answer positively and an answer upon information and belief only should be treated as an evasion and an admission of the facts alleged in the complaint. (*Curtis* v. *Richards & Vantine*, 9 Cal. 33, 38; *San Francisco Gas Co.* v. *City of San Francisco*, 9 Cal. 452, 466; *Loveland* v. *Garner*, 74 Cal. 298, 300 [15 Pac. 844]; *Zany* v. *Rawhide Gold Mining Co.*, 15 Cal. App. 373, 376 [114 Pac. 1026].) In view of the rule of the cases cited the answer should have been treated as sham and evasive and the respondent was entitled to judgment upon the completion of a *prima facie* case. The character of the pleadings was such, therefore, as to sustain the finding of due execution of both the note and the mortgage.

[3] But notwithstanding the defective pleadings the parties went to trial and the appellant endeavored to prove that the note and mortgage were not properly authorized. In this respect its proof was on a line with its pleading. Though it had every opportunity to produce evidence in support of its pleading, it rested upon the testimony of witnesses who were able to testify merely that they had no information or knowledge upon the subject matter of their testimony. The appellant also offered in evidence portions of the minutes of the meetings of its board of directors and of its stockholders from which it is argued that the

authority to execute this particular note and mortgage does not appear. The burden of proof of want of authorization was, of course, upon the appellant. (*Patterson* **v.** *Robinson,* 116 N. Y. 193, 200 [22 N. E. 372].) The portion of the minutes which was offered in evidence discloses some of the transactions of the corporation and does, as claimed by appellant, fail to mention the note and mortgage in suit. Because of this fact the appellant argues that the case is controlled by *Blood* v. *La Serena Land & Water Co.,* 113 Cal. 222 [41 Pac. 1017, 45 Pac. 252], and *Bliss* v. *Kaweah Canal & Irr. Co.,* 65 Cal. 502 [4 Pac. 507]. The Bliss case rested upon the definite finding that no resolution, either general or specific, had been passed authorizing the president of the corporation to execute the document in question, and in fact no authority had been given him to affix the corporate seal to any document executed in the name of the corporation. The Blood case was determined upon the admitted facts that the documents in question were executed solely upon the pretended authority conferred by the stockholders of the corporation at its first meeting prior to the organization of its board of directors. In that case there was no act of the board of directors pretending to confer either general or specific authority for the execution of the documents. It was held in each case that the instrument was not duly executed by the corporation, authority therefor not having been given in writing as required by section 2309 of the Civil Code.

In the case before us two circumstances are present which did not arise in the California cases cited. First, it appears that the president and secretary of the corporation who executed the note and mortgage were the owners of the corporation and used it merely as their *alter ego* in the transaction of their business. Second, the board of directors of the corporation entered into a contract in writing with the secretary of the corporation whereby he was employed to act as the corporation's general manager and wherein he was given blanket authority to do anything and everything which in his judgment might be to the best interests of the company with full power to act on the part of the corporation for that purpose.

[4] In regard to the relation of Cook and Britten to the corporation, it appears that they held 7,000 shares out of the

7,500 of the capital stock of the corporation issued at the time of the execution of the documents. The remaining 500 shares were held by one of their employees, who was designated as a sales agent. The corporation was engaged in the business of raising hogs on ranches acquired by Cook and Britten in the county of Imperial. All these properties had been acquired and all the business of stocking them had been conducted by Cook and Britten in the name of the corporation without any specific authorization from the board of directors other than that noted. The board then consisted of three directors, Cook, Britten, and their sales agent. Where an individual is the owner of all the corporate capital stock and uses the corporation merely as an instrumentality through which he transacts his business, the separate entities will be disregarded when necessary to prevent fraud and to protect the rights of third persons. (*Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 Pac. 673]; *Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675, 696 [227 Pac. 723, 731].) In the last case the supreme court say that when such a situation exists, "equity, looking to the substance rather than the form of the relation, and the law as well, will hold such corporation obligated for the acts of the sole owner of the corporation to the same extent and just as he would be bound in the absence of the existence of the corporation." Though the cases cited related to a situation where but one individual used the corporate name in the manner suggested, the principle is the same when two own the stock and act in conjunction in the name of the corporation. (*McCormick-Saeltzer Co.* v. *Grizzly Creek Lumber Co.,* 74 Cal. App. 278 [240 Pac. 32].)

[5] In relation to the authority under which Cook and Britten acted in executing the note and mortgage it appears that by the by-laws of the corporation they had been authorized to execute all documents under seal and that Cook had been expressly employed as the general manager of the corporation with full power to act. On this phase of the case the rule applicable is that stated in Cook on Corporations, 7th ed., vol. 3, sec. 716, *McCartney* v. *Clover Valley Land & Stock Co.,* 232 Fed. 697, 702 [1 A. L. R. 1127, 146 C. C. A. 623]', *Aigeltinger, Inc.,* v. *Burke,* 176 Cal. 621, 626 [169 Pac. 373], and cases there cited, which

is that when a corporation suffers its officers to have actual charge and management of the business of the corporation and to so act as to lead those having dealings with the corporation to believe that they are acting under proper authority of the corporation, and this conduct continues for a long period of time with the full knowledge and consent of the corporation, it thereupon becomes bound by the acts of its officers done under its name. Here the evidence is that the corporation did not only give to Cook plenary power to do everything which he believed to be essential for the benefit of the corporation, but held out both Cook and Britten as its duly authorized agents to contract for it, and with full knowledge of the circumstances accepted all the benefits of their actions, received and retained possession of the lands which they had purchased in the name of the corporation, and on numerous occasions in both stockholders' meetings and meetings of the board of directors approved the things done for its benefit by these officers.

The second point presented by appellant is that inasmuch as the trial court did not expressly find on the issue of ratification or estoppel those issues are not involved on this appeal. It is not necessary to enter into a discussion of the difference between the doctrines of ratification and estoppel as used in cases of this kind. **[6]** Generally speaking, ratification applies to a formal declaration of approval of the act of another by the party sought to be bound, whereas estoppel is where a party is bound by his own act, but as said in *Curtin* v. *Salmon River etc. Co..* 141 Cal. 308, 312 [99 Am. St. Rep. 75, 74 Pac. 851], the legal effect is the same and it can matter little by what name it be called. **[7]** Neither ratification nor estoppel was expressly pleaded in the complaint and of course it was not necessary to do so. The suit was one to foreclose a mortgage and the respondent was required to make out a *prima facie* case. When the defense of want of execution was interposed he could then show acts constituting an estoppel without further pleading. (*Blood* v. *La Serena Land & Water Co.,* 113 Cal. 221, 229 [41 Pac. 1017, 45 Pac 252].) The defense of estoppel *in pais* is a mixed question of law and fact. (10 R. C. L., sec. 151, p. 845.) **[8]** The trial court found that the corporation,

by and through its president and secretary, executed the mortgage under its corporate seal on July 1, 1917, paid the interest thereon up to the first day of October, 1919, and that the note was given in part payment of the purchase price upon the land upon which the mortgage was a lien and that the conveyance thereof to the corporation was a part of the same transaction. If the trial court had drawn from these facts the conclusion that the corporation was thereby estopped from denying the note and mortgage there would have been an end to the argument. It is because the trial court did not draw this conclusion that the appellant now insists that the respondent may not rely upon the doctrine of estoppel. All the evidence shows without conflict the facts from which an estoppel should arise. The original representations in the mortgage itself that the president and secretary were duly authorized to execute it; the knowledge on the part of the corporation of the execution of the mortgage and that it was to secure part payment for the land which the corporation held, the payment of the semi-annual interest thereon for a period of some two years, the retention of the benefits of the transactions over a period of three years before the suit to foreclose was commenced, the failure of the corporation either before or after the commencement of the action to restore the consideration or to do equity in the premises, and the detriment which the respondent would suffer if the appellant should prevail would have required a conclusion on the part of the trial court that the appellant was thereby estopped from denying the due execution of the mortgage. These facts, which are all undisputed, bring the case within the provisions of subdivision 3, section 1962, of the Code of Civil Procedure, and by reason of that section the conclusive presumption follows that the appellant is estopped from denying its act. The judgment itself is a conclusion of law in favor of the respondent. Taking the judgment with the facts which the court found to be true, it is evident that if any further facts or conclusions of law had been made they too must have been favorable to the respondent. Such being the case, the failure to make more complete findings of fact or conclusions of law does not call for a reversal of

the judgment. (*Rea* v. *Haffenden,* 116 Cal. 596, 600 [48 Pac. 716] ; *Hulen* v. *Stuart,* 191 Cal. 562, 572 [217 Pac. 750].)

Sturtevant, J., and Langdon, P. J., concurred.