[Civ. No. 7064. First Appellate District, Division Two.—January 16, 1930.]

B. F. SCHLESINGER & SONS (a Corporation), Respondent, v. KOHLER & CHASE (a Corporation), Appellant.

A. E. Shaw for Appellant.

Dunne, Dunne & Cook for Respondent.

NOURSE, J.—Plaintiff sued to recover the balance claimed to be due under a written contract. The cause was tried before the court sitting without a jury and resulted in a judgment for plaintiff in the sum of $8,160.77. Defendant has appealed upon typewritten transcripts.

The plaintiff corporation operated a department store in the city of Oakland under the name of "Kahn's"; the defendant corporation operated a music store in San Francisco. In the contract hereafter referred to the plaintiff was mentioned as "Kahn's," "Kahn Bros." and Schlesinger's," and the defendant is referred to as "The Music Company."

The contract was duly executed by the two corporations on May 1, 1925. At that time a music department was being operated in Kahn's by one Jessen. This concession was sold by Jessen to defendant and the latter retained Jessen as salesman in charge, or manager of sales. At the instance of plaintiff the contract of May 1, 1925, was executed providing that The Music Company should operate its department "wholly under the supervision of Kahn's, and, so far as the public is concerned, as an integral department of Kahn's." Space in the store was leased to The Music Company for a period of five years, the lease being subject to termination by either party on January 1, 1926. The Music Company agreed to pay as rental for the space, and in consideration of Kahn's carrying the installment and charge accounts, a sum equal to 12½ per cent of the total net sales of the department. If the rental as so computed shall not have amounted to $12,500 for the six months' period commencing July 1, 1925, The Music Company was to make up the difference so that the rental for the six months' period should equal that amount. The Music Company was required to pay all its employees in the department and to expend at least 5 per cent of its net sales in newspaper publicity. The Music Company agreed to hire all its employees through Kahn's, subject to the latter's control and super-

vision. These employees were to be paid by Kahn's and the payments charged to The Music Company's account.

The arrangement by which Kahn's purchased and carried the installment and charge accounts of the department is found in the following language of the contract: "Kahn's shall purchase and carry the installment contract accounts and charge accounts of the department. If any instrument covered by an installment contract shall be taken in exchange or revert, or for any reason an account fails to meet four (4) consecutive monthly payments and becomes uncollectible in the opinion of Kahn's, the unpaid balance of the principal shall be charged against The Music Company and deducted from the gross sales before figuring net sales. Following the termination of this agreement Kohler & Chase agrees to repurchase, for cash, any contract or account which fails to meet four (4) consecutive monthly payments and which Kahn's may deem uncollectible, paying therefor the unpaid balance of the principal less twelve and one-half per cent (12½%). All of such contracts or accounts are to be assigned by Kahn's to The Music Company without recourse."

Payments and collections on open charge accounts of Kahn's were to be applied *pro rata* against the music department items and the other items of the account, all of which were to be handled in the same manner and form as Kahn's handled its own installment and charge accounts.

The contract was prepared in the usual form used by Kahn's in leasing space in its store, but, before its execution, there was inserted at the special request of defendant and for the purpose of enabling the defendant to investigate and assist in making collections of unpaid accounts, a clause which reads: "Kahn's shall give The Music Company notice of any delinquencies within thirty (30) days following the date thereof."

The issues as tried are simple. The contract and lease were terminated by mutual consent as of December 31, 1925. Soon thereafter representatives of the parties endeavord to adjust the accounts between them covering instruments which had been sold in the store and returned to defendant. On May 13, 1926, plaintiff billed defendant for $1044, being the amount then claimed to be due. On July 26, 1926, plaintiff's attorneys made demand on defendant for

$11,264.51 claimed to be due on the open accounts, and on October 6, 1926, this action was commenced by the filing of a complaint in which the sum of $8,291.02 was claimed to be due upon the same accounts. After the complaint was filed, but before trial, defendant paid to plaintiff $2,813.23 and prior to the date of judgment plaintiff had collected on outstanding accounts over $1300 of the amount sued for. Credit for some of these payments was given and judgment on this issue went for plaintiff in the sum of $4,006.95. The dispute between the parties on this issue relates to the liability of the defendant to reimburse plaintiff on the overdue accounts of sales which plaintiff had assumed to collect for defendant. It is the contention of the defendant that it is not liable for any overdue account, notice of the delinquency of which was not given defendant as stipulated by the contract.

The other issue involved relates to the claim for unpaid rental of the store space. The net sales in the defendant's department having fallen far below the amount anticipated, the 12½ per cent deduction failed to reach the minimum of $12,500 fixed as the rental for the first six months' period. It is the claim of defendant that it obtained oral consent of plaintiff to modify these terms of the contract and that this change was executed some time prior to the termination of the lease; that, thereafter, differences having arisen between the parties, a written accord and satisfaction was made and the amount then agreed on was paid by defendant and received by plaintiff. The plaintiff disputes the claim on the ground that the accord was unauthorized by the proper corporate officers and that the payment made thereunder was not a satisfaction because other conditions were not complied with.

On the first issue the parties split on the interpretation of the clause of the contract whereby plaintiff undertook to give defendant notice of each delinquency within thirty days after it occurred. The plaintiff insists that it is merely a covenant and the defendant argues that it is a condition precedent to its obligation to repurchase the delinquent accounts.

We take the view that the clause is merely a covenant the failure to perform which did not excuse performance by defendant. The evidence is clear that plaintiff did not

give notice of these delinquencies to defendant as required by the contract, but there is no evidence of any character tending to prove what, if any, damage the defendant suffered by reason of such failure of performance. ■ One of the distinctive features of a covenant which distinguishes it from a condition precedent is that, when it goes only to a part of the consideration, nonperformance is not a defense if the breach of the covenant may be paid for in damages. (*Ernst* v. *Cummings*, 55 Cal. 179, 183.) ■ Here the defendant pleaded that the clause was inserted in the contract in order that it might investigate the delinquencies and assist in making collections and that plaintiff's failure to give the required notice caused defendant damage. But the defendant did not make any proof of damage and we must assume that the trial court impliedly found that no damage was suffered by plaintiff's breach.

Accordingly, defendant has had its day in court on the issue raised in the pleadings and the judgment on this phase of the case must stand, with these exceptions: the judgment on the uncollected accounts is manifestly $413.78 in excess of that shown by the evidence to be due, and the defendant is entitled to an assignment of all accounts which remain uncollected, or a credit on the judgment of all payments which have been collected by plaintiff subsequent to the trial. This portion of the judgment should therefore be modified so as to provide that the plaintiff shall recover the sum of $3,593.17 upon these uncollected accounts instead of the sum of $4,006.95, and that the plaintiff shall forthwith assign to the defendant the uncollected accounts to the amount of the judgment, as modified, or, if any of said accounts have been collected in the meantime, then the judgment should be further reduced to that extent, taking into account in each instance the twelve and one-half per cent deduction provided for in the contract.

■ The issue of unpaid rent was raised by plaintiff by amendment to its complaint some time after the litigation was started. It is merely an afterthought which has no foundation in equity or good conscience. On January 25, 1926, there existed between the parties a *bona fide* controversy as to their rights and obligations under the contract of May, 1925. This controversy related to the amounts due on uncollected accounts as well as to the amount due for

rental of store space. It arose through plaintiff's failure to comply with the terms of the contract and through the oral modification of the terms relating to rental made in September, 1925. In the conference held in January, 1926, between the representatives of these parties, Mr. Schlesinger, acting for plaintiff, agreed in writing to accept in full for all claims for rental the sum of $3,054.48, and this sum was paid and received by the corporation in full satisfaction of that claim. There was, therefore, a complete accord and satisfaction of the claim for rent under the contract within the meaning of sections 1521–1523 of the Civil Code.

█ ▪ In support of this portion of the judgment plaintiff argues that there was no satisfaction because the accord was made conditional upon the settlement of other claims which were not paid. The language of the agreement of January, 1926, upon which this argument is based reads: "This settlement does not release you (defendant) from your obligation under the contract for outstanding accounts *any of which prove to be in arrears* or in which there is a loss we expect you to reimburse us as per contract." There are two answers to the argument. First, the settlement of these outstanding accounts is not a condition to the accord and satisfaction, but the clear meaning of this portion of the January agreement is that the parties *excepted* the outstanding accounts controversy from the settlement and intended the latter to be a complete settlement and adjustment of the rent issue alone. Second, the time for reimbursement of the outstanding accounts was not fixed in the January agreement and the stipulation in the January agreement that the settlement of these accounts "which prove to be in arrears" should be made "as per contract" could mean nothing more than that such payments should be made by the defendant when found due. This contingency has not yet arisen as has been shown heretofore. Even during the course of the trial it appeared that plaintiff had been and still was engaged in collecting these outstanding accounts—that in some cases actions had been brought by the plaintiff against the purchasers, that attachments had been levied and that these cases were pending and unsettled, while from the date of the January agreement to the time of the trial on November 9, 1927, the plaintiff itself was unable to fix any definite amount which it should claim to be due on these accounts.

■ We are not impressed with plaintiff's argument that the accord was ineffective because not specially authorized by its board of directors. All transactions, from the execution of the original contract in May, 1925, to the settlement in January, 1926, were conducted by Mr. Schlesinger, who was the active head and manager of the plaintiff corporation and his acts of January, 1926, were in the ordinary course and conduct of the business of the corporation. The corporation has not at any time repudiated any of these acts on the part of its manager but, on the contrary, has accepted and retained all the benefits from these acts. It should not, therefore, be heard at this time to dispute the authority of Mr. Schlesinger to make the settlement. (*Grummet* v. *Fresno etc. Co.*, 181 Cal. 509, 513 [185 Pac. 388]; Code Civ. Proc., sec. 1963, subd. 20; *Reardon* v. *Richmond Land Co.*, 21 Cal. App. 357 [131 Pac. 894]; *Meister & Sons Co.* v. *Wood-Tatum Co.*, 26 Cal. App. 584, 587, 588 [147 Pac. 981].)

For the reasons given the portion of the judgment which awarded plaintiff the sum of $3,054.58 by way of rental, is error and that amount is accordingly stricken therefrom.

The judgment is reversed, with directions to enter a modified judgment in favor of plaintiff in accordance with the views expressed herein, with costs of this appeal to appellant.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 14, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1930.

All the Justices concurred.