[Civ. No. 4273. Third Appellate District.—May 15, 1931.]

THE TRANSPORT OIL COMPANY (a Corporation), Respondent, v. GEORGE B. BUSH, Appellant.

George B. Bush, *in pro. per.*, and Philip C. Farman for Appellant.

Joe Crail for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—This cause is before us upon an appeal by the defendant from a judgment rendered in the trial court, construing and declaring the rights and duties of the parties to this action, as set forth in and dependent upon an instrument of conveyance executed by the defendant and his wife, and delivered to the plaintiff on the eleventh day of May, 1923. The last amended complaint, filed by the plaintiff in its action seeking declaratory relief, sets forth that a controversy has arisen and exists between the plaintiff and the defendant relative to the duties of the respective parties to pay whatever taxes are levied upon the properties referred to in the instrument of conveyance just mentioned.

On the part of the plaintiff it is contended that the respective parties to this action owned certain interests in the property referred to in the instrument of conveyance, and that under the instrument of conveyance each party should pay whatever taxes were assessed thereon, in proportion to their respective interests. On the part of the defendant it is contended that by reason of certain language contained in an instrument of lease entered into between the United States government and the plaintiff, whereby the plaintiff was granted certain rights and privileges relative to the extraction of oil and other minerals from the premises hereinafter described, the plaintiff should pay all of the taxes levied upon the property hereinafter described, irrespective of the interest or ownership of the parties hereto, therein.

By way of cross-complaint the defendant asked judgment against the plaintiff for and on account of certain charges paid by the defendant to the plaintiff on account of the cleaning of the oil extracted from the premises. On the part of the plaintiff it is insisted that an oral contract was entered into between the parties relative to the cleaning or preparing of the oil for market in such manner that a much higher price might and could be obtained therefor. The record shows that after operations had been carried on upon the premises hereinafter described, the oil became charged

with a large quantity of water, which water was not free and would not settle or separate from the oil by force of gravity, but existed in the form of an emulsion composed of oil, gas and water; that in order to separate the oil and crack or break the emulsion, it was necessary to use a combined process of electrical dehydration, and also a strong chemical substance known as "Tret-o-lite". The record shows that the plaintiff expended the money necessary to install the electrical dehydration plant and make necessary preparation for the cracking of the emulsion so that the gas and water might be separated from the oil. By means of this process of treatment or cleaning of the oil, a much higher price was obtained for the product than could otherwise be had.

On the part of the plaintiff it is insisted that an oral contract was entered into relative to paying the costs and expenses of treating or cleaning the oil after the installation of the plant just referred to, and that by reason of the oral contract, all of the parties interested in the product agreed to pay the expenses of the treatment, in proportion to their respective interests, the cost of installation of the plant being all borne by the plaintiff. On the part of the defendant, while admitting that certain payments have been made by him of his proportionate share of the costs and expenses of treating the oil, that the oral contract referred to, if it ever existed, does not now exist, and the defendant asks for the recovery of moneys in the hands of the plaintiff retained as the defendant's proportionate share of the costs and expenses of cracking the emulsion and cleaning the oil.

The complaint sets forth that on the eleventh day of May, 1923, the defendant George B. Bush and his wife, Marion W. Bush, by an instrument of conveyance, conveyed to the plaintiff certain real property situate in Kern County, described as follows, to wit: "All of the southeast quarter of Section 4, Township 11 North, Range 23 West, S.B.B.&M., reserving and excepting therefrom, however, in favor of the grantor George Barnard Bush, the title to, and ownership of an undivided 25 per centum (25%) of all oil, gas and other hydrocarbon substances in or under the said land, or which may be extracted from, or produced from, or upon said land, and reserving also, the perpetual right and easement in the grantors, and each of them, his, her, and their

respective heirs, executors, administrators, agents and assigns, to enter upon the whole, or any part of the property conveyed by this instrument, for the purpose of inspecting the same, or any part thereof, or any oil well or gas well or other improvement thereon." The deed also, under certain conditions, reserved to the grantors the right to enter upon the premises and exploit the same for oil production purposes. The conveyance to which we have referred also contained the following paragraphs which are material to be set forth herein, to wit:

"(b) The grantee, its successors and assigns, shall and will, at the sole cost and expense of the grantee, its successors and assigns, respectively, comply diligently and promptly and fully with all United States laws and departmental rules and regulations of the Federal Government thereunder, to the end that all rights for the development and production of oil, gas and other hydrocarbon substances under such laws, rules and regulations, and particularly under prospecting permit Serial No. 033164, United States Land Office, Los Angeles District, California, and under any oil lease executed under or pursuant thereto, or in accordance therewith, may be fully preserved and enjoyed. If the grantee, its successors and assigns, respectively fail to do or cause to be done all or any of the said acts and things, in this paragraph hereinbefore referred to, within thirty (30) days prior to the time the same are required to be done, then the grantors, and each of them, his, her and their respective executors, administrators, heirs and assigns, shall have the right, in the name of the grantee, its successors and assigns, and at the sole cost and expense of the grantee, its successors and assigns, to do and perform the same, but nothing herein is intended, or shall be construed as requiring the grantors, or either of them, or his, her, or their respective heirs, executors, administrators or assigns, so to do. Provided, further, however, that the doing or performance of such act or thing by the grantors, or either of them, or his, her or their respective executors, administrators, heirs or assigns, shall not relieve the grantee, its successors or assigns, or any of them, from any default hereunder, or from any of the consequences hereunder of any such default.

"(c) The undivided twenty-five *per centum* of the oil, gas and other hydrocarbon substances in or under the said

land or which may be extracted from, or produced from or upon said land herein reserved and excepted in favor of George Barnard Bush, shall be extracted and produced by the grantee and its successors in interest in the property hereby conveyed, at the sole cost and expense of the grantee, and its successors in interest in said property respectively, for and on behalf of, and free of expense to said George Barnard Bush, and his heirs, executors, administrators and assigns, and shall be diligently sold at all times by the said grantee, and its successors in interest in said land, at the highest price reasonably obtainable therefor, but never less than what is known as and called 'the standard oil market price', prevailing during the month the same is produced, for products of like kind and quality, in the field where the land is situated, and payment therefor, without any deduction for expense of selling, handling or otherwise, shall be made monthly at said price on or before the 23rd day of each month for all of said products which may be sold during the preceding calendar month, segregated as follows: . . . ''

██ The deed further provided that so much of the production of the oil as should be required to be paid to the United States government should be deducted from the twenty-five *per centum* retained by the grantors.

After the execution and delivery of the deed of conveyance by the defendant and his wife to the plaintiff, the plaintiff entered into a lease agreement with the United States government, providing for the payment of five *per centum* of the gross profits of the oil taken from the premises herein referred to, which lease, among other covenants to be performed by the plaintiff, contained the following: ''To pay when due, all taxes lawfully assessed and levied under the laws of the state, upon improvements, oil and gas produced from the lands hereunder, or other rights, property or assets of the lessee.''

The controversy arose over the fact that the county of Kern levies and collects taxes upon the oil, minerals and hydrocarbon products produced from, and contained within the premises hereinbefore described, as distinct from the surface ownership of the forty-acre tract of land.

The lease executed and delivered by the United States government to the plaintiff authorizing it to extract oil and hydrocarbon substances from the forty acres of land de-

scribed, makes no reference to the rights or interests of the defendant therein or thereto, but it does contain covenants and conditions necessary to be construed and interpreted in connection with the provisions and conditions of the deed of grant under which the plaintiff is vested with an interest in the oil, minerals and hydrocarbon products contained in the demised premises. The plaintiff construes the foregoing quoted language from the lease as though it refers only to the assets of the lessee. This, however, we think is an erroneous interpretation. The lease distinctly specifies that the plaintiff is to pay all taxes levied upon oil and gas produced from the premises. All the remainder of the covenant consists of general language relating to such other property rights or assets as might belong to the lessee. In other words, so far as the covenant is concerned affecting the plaintiff, it must be construed as though the language therein contained consisted only of the following: "To pay when due, all taxes lawfully assessed or levied under the laws of the state, upon all oil and gas produced from the lands hereunder." There is no limitation as to the ownership of the oil and gas. It is a direct covenant to pay whatever taxes may be levied upon the product that may be taken from the demised premises. Again, this lease is executed in accordance with the laws of the United States, and the rules and regulations of the federal government.

This brings us back to a consideration of paragraph (b) contained in the deed of conveyance, which reads as follows: "(b) The grantee, its successors and assigns, shall and will, at the sole cost and expense of the grantee, its successors and assigns respectively, comply diligently and promptly and fully with all United States laws and departmental rules and regulations of the federal government thereunder, to the end that all rights for the development and production of oil, gas and other hydrocarbon substances under such lease, rules and regulations, and particularly under Prospecting Permit Serial No. 033164, United States Land Office, Los Angeles District, California, and under any oil lease executed under or pursuant thereto, or in accordance therewith, may be fully observed and enjoyed." The lease to which we have referred, it may be again stated, was executed under and in accordance with the laws of the United States and departmental rules and regulations of the

federal government. The rules and regulations of the federal government prescribed that oil leases shall be in a certain form, to wit, in the form executed and delivered to the plaintiff in this action, and that it shall contain certain covenants and conditions to be performed by the lessee, among them being the payment of all taxes levied upon all oil, etc., produced from the leased premises. The condition specified in the paragraph of the grant under which the plaintiff was vested with title provides that the plaintiff shall perform all those conditions at its sole cost and expense. The plaintiff contends that its duty under the lease and the grant to which we have referred binds it only to comply with the rules and regulations, and not to any covenants or conditions contained in the lease. However, it is provided that the lease shall be in a certain form which makes it a part and parcel of the rules and regulations adopted by the federal government, under and by virtue of which the plaintiff is permitted to go upon the premises and extract therefrom oil, gas and hydrocarbon substances.

Paragraph "B" and "C" of the deed of conveyance relate to entirely different subjects. Everything referred to in paragraph "B" must be done and performed at the sole cost and expense of the grantee, etc., and from the language found therein, whereby the plaintiff covenants to comply with all the rules and regulations of the federal government which, as we have stated, includes the lease, binds it to do and perform all those acts at his own cost and expense. Paragraph "C" of the lease has only to do with the expenses of extracting the oil and marketing the same. That a certain percentage of the oil remains the property of the defendant, and upon which he would otherwise be compelled to pay taxes, is wholly immaterial, because in the insertion of paragraph "B" into the grant of conveyance it must be held that the parties intended that everything required to be done and performed by the rules and regulations of the federal government, and the covenants and conditions contained in the lease under which the plaintiff would be authorized to enter upon the premises, were fully taken into consideration, and language used which would cover all and every of the conditions, and then it is provided that such acts shall be at the sole cost and expense of the grantee. There is nothing in paragraph "B" re-

lating to the cost and expense of extracting the oil or of marketing the same. It is expressly directed to the performance of all the acts required to be performed under the rules and regulations of the federal government permit and lease secured from the federal government. Paragraph "B" of the deed of conveyance requires that the plaintiff shall protect all the rights of the parties secured by the lease, and his rights cannot be protected unless all the conditions of the lease are complied with.

While, as urged by the respondent, no departmental rule or regulation requiring the lessee to pay taxes appears to have been introduced as testimony in this case, there is a covenant in the lease to that effect, and this covenant must have been in contemplation of the parties to this action when the deed of conveyance was executed, and therefore becomes just as binding as though some departmental rule or regulation existed independently of the lease requiring the lessee to pay taxes.

We do not need to review the authorities cited by the respondent relative to the duty of every owner of property to pay all taxes levied and assessed thereon, and we can agree with respondent that if the deed of conveyance and the lease to which we have referred did not require the lessee to pay all taxes, then and in that case it would be obligatory upon the defendant to pay whatever taxes might be levied upon his twenty-five per cent interest.

It necessarily follows from what we have said that the finding of the court relative to the payment of taxes is unsupported by the evidence and that the construction given to the agreement by the court is not in accordance with the true intent and meaning thereof.      A further question, however, is presented for our consideration in the cross-complaint filed by the defendant and the plaintiff's answer thereto relative to the costs and expenses of cracking the emulsion heretofore referred to in this opinion. The contention of the plaintiff is that an oral agreement was entered into between the parties to the effect that the costs and expenses of cracking the emulsion should be paid by the parties in proportion to their interest in the oil, gas and hydrocarbon products produced or extracted from the premises. The finding of the court in relation to this question is simply that the market value of the oil with the emulsion therein

was and is not nearly so great as when the emulsion is broken and the water and gases removed therefrom. There is no finding of the court to the effect that the breaking of the emulsion was reasonably necessary in order to profitably market the product. Paragraph ''C'' of the deed of conveyance provides for the extraction of oil, gas and other hydrocarbon substances from the premises by the plaintiff at the sole cost and expense of the grantee, etc. . . . and that the product ''shall be diligently sold at all times by the said grantee, and its successors in interest in said land, at the highest price reasonably obtainable therefor''. No construction can be given to this portion of the deed of conveyance by reason of the absence of any finding of fact as to whether the cracking of the emulsion was reasonably necessary, to the intent and purpose that the highest price reasonably obtainable for the product should or could be obtained. If the cracking of the emulsion is a treatment of the oil reasonably necessary to obtain the highest price which might reasonably be obtained for the product, then and in that event the costs and expenses thereof would necessarily be chargeable to the plaintiff as grantee under the deed of conveyance. Otherwise, it would be an item of expense to be borne by the parties interested in the product.

Here, again, we are confronted with the provisions of section 1060 of the Code of Civil Procedure providing for declaratory judgment. That section, so far as material here, reads as follows: ''Any person interested under a deed, will or other written instrument or under a contract, who desires a declaration of his rights or duties with respect to another,'' etc., may bring an action to have such instrument or contract or deed construed, etc. The question arises, must the contract sought to be construed be in the form of an instrument in writing? Is it within the contemplation of the section that testimony shall be taken to establish an oral contract, and then pronounce judgment construing the same and declaring the intent and purpose of the parties as found in such contract? While the language of the section, literally construed, would include an oral contract, a careful consideration of all the words preceding the word ''contract'' leads us to the conclusion that the portion of the section quoted and relied upon in this action must be held to refer only to a contract that is in writing, to a con-

tract the terms of which are fixed and definite and not de-- pending upon the oral declarations of witnesses or the memory of the parties as to the language used by them in entering into an agreement. Section 1061 of the Code of Civil Procedure reads: ''The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.'' Thus, it may be safely stated that whether the legislature intended to refer to oral contracts by the words used in section 1060, *supra*, it is evident that the court ought to and should refuse to exercise the power granted under the provisions of section 1060 of the Code of Civil Procedure, whenever it is necessary, first, to take testimony to prove the existence of an oral contract, and then enter a judgment granting declaratory relief. ▆

In all such cases we have no hesitancy in stating that the proper course is to remit the parties to the remedies provided by law, as provided for in section 1062 of the Code of Civil Procedure. While the California cases are silent upon the subject, the whole tenor of authorities found in other states is to the effect that declaratory judgments will be refused where, to enter the same, requires a judicial investigation of disputed facts. This has been carried so far in some cases having to do with written instruments where both questions of fact and construction are involved that relief will be denied. Thus, in 6 Ruling Case Law Permanent Supplement, page 3957, we find the following: ''Declaratory judgments being within the discretion of the court, it may in its discretion refuse a declaration which can only be made after a judicial investigation of disputed facts, especially where the disputed questions of fact will be the subject of judicial investigation in a regular action. For example, the court will not make a declaration as to the construction of a written instrument where both questions of fact and construction are involved, and a decision as to the matter of construction will not settle the controversy.''

In the notes found in 68 A. L. R., beginning on page 110, the rule is thus stated: ''Ordinarily a declaratory judgment will be refused where to render the same requires a judicial investigation of disputed facts.'' (Citing *Newsum* v. *Interstate Realty Co.*, 152 Tenn. 302 [278 S. W. 56]; also, 12 A. L. R. 72; *Ladner* v. *Siegel*, 294 Pa. 368 [144 Atl.

274].) To the same effect are the notes found in 12 A. L. R., beginning on page 72. See, also, as to relief being discretionary, notes in 50 A. L. R., beginning on page 42; also, a long list of annotations contained in 19 A. L. R., beginning on page 1124.

While the respective parties in their briefs have given considerable attention to the meaning of the words "handling or otherwise", found in paragraph "C" of the deed of conveyance, we do not think that the use of the word "otherwise" extends either the rights or duties of the respective parties any further than to like or similar actions previously specified in said paragraph, and that the interpretation of the word does not call for special consideration herein.

From what we have said it necessarily follows that the judgment of the trial court should be, and the same is hereby, reversed and the cause remanded for further proceedings.

PLUMMER, Acting P. J.—Pursuant to stipulation on file herein it is ordered that the action be and the same is hereby dismissed.