[Civ. No. 6687. Third Dist. Mar. 5, 1942.]

CORPORATION OF AMERICA (a Corporation) et al., Respondents, v. DURHAM MUTUAL WATER COMPANY, LTD. (a Corporation), Appellant.

Grayson Price for Appellant.

Jerome D. Peters for Respondents.

STEEL, J. pro tem.—This appeal is from a judgment in favor of plaintiffs in an action for declaratory relief.

The question presented involves an oral contract alleged to have been entered into by the predecessors in interest of the respective parties hereto concerning the delivery of irrigation water to the lands of the plaintiffs. The trial court found the agreement to exist and upheld its validity.

To facilitate an understanding of the situation we consider it necessary to set forth the facts in some detail. The record discloses that plaintiffs' predecessor in interest, one Robert W. Durham, was the owner of certain lands known as the "Durham Ranch," together with appurtenant riparian water rights, situate near the town of Durham in Butte County, west of and adjacent to Butte Creek; that the State Land Settlement Board, predecessor in interest of the defendant herein, which was created by an act of the Legislature (Statutes of 1917, page 1566) for the purpose of acquiring land for rural farms, purchased a considerable acreage including riparian

rights on Butte Creek, which project became known as "Durham Land Colony," and included an area on both sides of Butte Creek. These lands were sold in small parcels with the appurtenant water rights to individual farmers, the board agreeing to deliver the water to the respective parcels at cost. By a decree rendered in the Superior Court of Sutter County in 1920, the plaintiffs' predecessor, Robert W. Durham, was adjudged to be the owner of two cubic feet per second (80 miner's inches) of the waters of Butte Creek, and the State Land Settlement Board to be the owner of forty second feet or sixteen hundred miner's inches. In 1919 the board desired to deliver water to certain parcels of land west of Butte Creek and south of the Robert W. Durham lands, and in preparation therefor it became necessary to obtain rights of way for a high line ditch to transport such water. The plan of supply was by gravity flow, and a diversion dam was built on Butte Creek some four or five miles upstream, and the water then taken by means of a ditch on the easterly side of Butte Creek down to the Colony lands. At a point approximately a mile northerly on the Robert W. Durham lands a portion of such waters was diverted west across Butte Creek by means of a siphon to supply Durham's land and those above referred to lying south of Durham's land.

The board's superintendent, George C. Kreutzer, contacted the landowners west of Butte Creek in connection with obtaining the necessary rights of way for the new ditch, and in one instance secured a written agreement from one of the owners granting such right of way across their lands directly north of Durham's land. It appears that Durham was not willing to sign such an agreement as the one proposed, and insisted that in consideration of granting the right of way across his land, the board agree to deliver to him perpetually and without cost to him, his two second feet of water, with the right of accumulation, that is, to allow it to accumulate so that if he did not use his allotment one day he would be entitled to twice that amount the second day, and so on to the capacity of the ditch.

It is Durham's testimony that Kreutzer agreed to this, and the ditch was constructed accordingly. In addition Durham paid to the board the sum of $125 toward the construction of the permanent diversion dam on Butte Creek, which circumstance lends support to the suggestion of permanence of the plan or agreement in question. The Durham lands,

prior to this agreement, had its own system of ditches which had supplied water to the lands for many years.

Upon completion of the ditch in question the waters were delivered without cost by the board, and later by its successor the defendant herein, from 1919 until 1938, when appellant demanded that the plaintiffs, the present owners of the Durham lands, place their lands and water rights upon the same basis as other land owners served with water, and pay for the delivery thereof in the same manner. Plaintiffs refused to do this, and appellant thereupon declined to deliver further water to them without cost. The instant action followed.

One of the main contentions urged by the appellant on this appeal is that the verbal contract found to have been executed between Kreutzer and Durham, which appellant disputes, is not legally enforceable for the reason that Kreutzer, the superintendent, acted without authorization of the board, and being a public official representing a public body, one dealing with him as such, comes within the rule of being charged with knowledge of, and is bound at one's peril to ascertain the extent of his power or authority to bind the public body for which he purports to act. While this is the rule as applied to functions of the state government acting in a governmental capacity, the rule has been relaxed in cases where public bodies contract with private parties and thus act in a proprietary or business capacity. In such an event its contracts and dealings are construed and measured by the same rules and with like effect as those of private citizens. (*Brown* v. *Town of Sebastopol*, 153 Cal. 704 [96 Pac. 363, 19 L. R. A. (N. S.) 178] ; *Sacramento County* v. *Southern Pac. Co.*, 127 Cal. 217 [59 Pac. 568, 825] ; and also *Meyer* v. *State Land Settlement Board*, 99 Cal. App. 337 [278 Pac. 452].) It will be seen, therefore, that the contract here must be considered in the light of rules of law governing similar contracts between private individuals.

Appellant contends that the board was unaware of the terms of the oral contract, although the record is silent in that regard. The superintendent, George C. Kreutzer, had died prior to the trial and no member of the board as it had theretofore existed, and which consisted of five members, was called to testify. The arrangement for the delivery of the water to the Durham lands continued from 1919 to 1928 under the board's jurisdiction, and from 1928 to 1938 under the supervision of the appellant, without inquiry or dispute whatsoever upon the part of either as to the conditions or

terms upon which the water was being so delivered. It would appear, therefore, that insofar as knowledge of the arrangement is concerned that the legal effect of the doctrines of ostensible authority and estoppel *in pais* would apply and render the contract valid and enforceable, supported with the presumption "That official duty has been regularly performed." (Code Civ. Proc., section 1963; *American System etc.* v. *Breakers Hotel Co.*, 217 Cal. 67-71 [17 Pac. (2d) 138]; *West American Finance Co.* v. *Pacific Indemnity Co.*, 17 Cal. App. (2d) 225, 236 [61 Pac. (2d) 963].)

Appellant next questions the validity of the contract under the statute of frauds. Respondents claim that the board and its successor, the defendant here, are estopped from asserting its invalidity under the doctrine just referred to, while appellant urges that this claim is not available to the respondents for the reason that estoppel was not specifically pleaded. This is true in cases where the doctrine is relied upon as a defense, however, in a plaintiff's pleading, such as we have here, where the contract is alleged to have been an executed one, it is not necessary to anticipate a defense thereto by pleading an estoppel. The instant case is factually similar to the case of *Corporation of America* v. *Harris,* 5 Cal. App. (2d) 452 [43 Pac. (2d) 307], wherein it is said at pages 461-462:

"Factually the case is similar to *Feeney* v. *Clapp,* 126 Cal. App. 729 [15 Pac. (2d) 178]. There a lease was entered into by Margaret Feeney as lessor and W. O. Clapp, as lessee. The former believed that the firm of F. H. Woodruff & Sons was the real party at interest, a member of said firm having advised Mrs. Feeney's agent that it would be convenient to name Clapp as lessee and that the latter would be given written authority to act. The authority was not given and in a suit against the firm to recover installments of rent the plaintiff prevailed. The doctrine of estoppel was invoked to sustain the judgment and, in commenting on the subject, the appellate court says: 'The firm members claim that the contract alleged was within the statute of frauds, and consequently that they are not bound, but it is plaintiff's position that they are estopped to assert the statute. On this question the finding was that defendant Woodruff immediately after the execution of the lease entered into possession, paid the rent and received the crops and other benefits thereunder; and this finding is also supported. Although a contract may be within

the statute of frauds, yet if the conduct of the party relying thereon has been such as to raise an equity outside of and independent of the contract he may be estopped to make that defense.' (See, also, *Schlesinger & Sons* v. *Kohler & Chase,* 103 Cal. App. 195 [284 Pac. 244]; *Wood Estate Co.* v. *Chanslor, supra.*)

Appellant's claim that estoppel must be pleaded is without merit. It has been held that when the doctrine has been relied upon as a defense, it must be pleaded if there is an opportunity to do so (*Peerless Motor Co.* v. *Sterling F. Corp.,* 139 Cal. App. 621 [34 Pac. (2d) 738]); but the rule does not apply to a plaintiff's pleadings. (*McCreery* v. *Charlton,* 185 Cal. 37 [195 Pac. 670]; *Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 210 [155 Pac. 986].) The court, however, must make a finding on estoppel when its decision is based thereon, which finding is sufficient if it recites facts from which an estoppel necessarily follows. (*Zenos* v. *Britten-Cook Land etc. Co.,* 75 Cal. App. 299 [242 Pac. 914].)''

It appears that Kreutzer, the superintendent and executive officer of the board, was in charge of the office of the board and negotiated contracts for the sale of lands within the colony as well as for the purchase of rights of way for irrigation ditches, and was generally in charge of all matters pertaining to the irrigation system serving the lands of the colony. Under such circumstances Durham, as well as all others having occasion to transact matters of business with the board, were reasonably justified in dealing with Kreutzer, who was held out, tacitly at least, by the board as having authority to negotiate and consummate all transactions necessary to put into operation the working plan for which the colony was created.

 Appellant further contends that the trial court had no jurisdiction to render judgment in this matter because declaratory relief (Section 1060, Code Civ. Proc.) is not applicable to disputed oral contracts, and that the parties must pursue their remedy at law for a determination of such disputed facts. The case of *Transport Oil Co.* v. *Bush,* 114 Cal. App. 152-161 [1 Pac. (2d) 1060], is cited in support thereof. While the cited case contains language which suggests support to such contention, the later case of *Herrlein* v. *Tocchini* (1933), 128 Cal. App. 612-617 [18 Pac. (2d) 73], appears to have expressly overruled it on this point as dicta. There the court said:

''The first point relied on for reversal is that the trial court

had no jurisdiction of the action. In support of this contention it is urged that declaratory relief, as provided for in Part 2, Title 14, Chapter 8, of the Code of Civil Procedure, is not applicable to disputed oral contracts and hence was not available to plaintiffs in the present action. The point is without merit. Appellants cite the case of *Transport Oil Co.* v. *Bush,* 114 Cal. App. 152 [1 Pac. (2d) 1060], as containing the proper construction of our declaratory relief statute. A careful examination of this case reveals that the language relied on by appellants is *dicta.* Moreover, in the later case of *Tolle et al.* v. *Struve et al.,* 124 Cal. App. 263 [12 Pac. (2d) 61], the same question is elaborately considered and determined adversely to appellants' position here. In that decision the court declares: 'We do not feel called upon to follow appellant into the field of foreign legislation and decision on this point, nor to engage in an analysis of the provisions of our own declaratory relief statute, for the reason that we consider this question to be definitely foreclosed by the decision of our own Supreme Court in *Hess* v. *Country Club Park,* 213 Cal. 613 [2 Pac. (2d) 782]. In that case the plaintiff, who held certain real property under a deed containing certain restrictive provisions, sought and secured declaratory relief adjudging that by reason of the change in condition and character of the neighborhood, it was no longer suitable for residence purposes and hence the restrictions were no longer binding or enforceable. The sole question involved in that proceeding was dependent upon the determination of a question of fact. . . . Unless the Supreme Court sees fit to recede from the position taken in this case, which seems entirely improbable, it can be no objection to a proceeding for declaratory relief that it involves and depends upon the determination of a question of fact.''

It is true the complaint here contains the usual allegations for declaratory relief, but it also contains allegations for specific performance, and the court found that an oral agreement had been entered into and had been fully performed for a period of nineteen years. While the court refused to decree specific performance because of the indefinite length of time involved requiring constant personal supervision, the judgment in effect is that the contract is valid and existing, and it would follow that in case of breach thereof a remedy at law for damages would be available to respondent.

The proceeding being equitable in nature the court should not be restricted in determining the issues of the entire con-

troversy thereby avoiding further litigation in that regard.

Appellant further complains that the judgment is erroneous in that it placed no limitation on respondents' right to accumulate their flow of water, and therefore illegally interferes with the water rights of others not parties to the action. We fail to find merit in this contention. The right to accumulate or pool the water must of necessity be limited to the capacity of the ditch. When the oral agreement was entered into the ditch had not been built, and the evidence fails to show its size or capacity. However, by way of illustration let us assume it will carry ten second feet. Respondents own a flowage of two second feet which, if used continuously, would amount to sixty second feet per month of thirty days. By pooling the accumulation they would be entitled to ten second feet for a period of six days in one month, and the remaining twenty-four days appellant would be entitled to the entire flowage, including the water belonging to the respondent. This operation is nothing more or less than rotating the water supply to the end that it will be applied most beneficially, thereby securing the maximum benefits from the increased supply of water. The other owners and users of water in the colony are members of appellant here, and as such are so represented in this action.

From an examination of the entire record we are satisfied that the conclusion reached by the trial court is proper and finds substantial evidentiary support therein. The judgment is affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.