Case 92.—ACTION BY THE BARBER ASPHALT PAVING COMPANY AGAINST THE CITY OF LOUISVILLE TO RESTRAIN THE SALE OF BONDS DEPOSITED TO SECURE A COMPLIANCE WITH A CONTRACT IT MADE WITH THE CITY.—Nov. 2.

## Barber Asphalt Paving Co. v. City of Louisville.

Appeal from Jefferson Circuit Court (Common Pleas Branch, 1st Division.)

SHACKELFORD MILLER, Judge.

Judgment for Defendant. Plaintiff appeals. Affirmed.

1. Street Improvement—Guaranty to Construct and Keep in Re-

pair—Authority to Make—A contract made by a city with a contractor for the repair of its streets in which it is stipulated that the contractor shall guarantee the   faithful performance of the contract according to the specifications, that the pavement therein specified and the materials composing the same shall be kept in good repair for the period of ten years from the completion and acceptance of the work, and requiring the contractor to deposit certain bonds with the city treasurer, who shall hold the same to be used as far as need be in making the necessary repairs, is not such a contract as is beyond the power of the city to make.   Such contract did not amount to an abrogation by the city of a governmental function or of its police power, nor did it relieve the city of the duty to protect the lives and property of its citizens.

**2.** Scope of Guaranty—Defects Contemplated—Leaking From Gas Mains—A guaranty by a contractor to keep a street in repair includes repairs made necessary by leakage of gas from defective mains as well as those required by defects in the work itself, and especially is this contemplated when streets are paved with asphaltum, as the evidence shows that among the forces which injuriously affect asphaltum streets is the leakage of gas from defective mains.

A. E. RICHARDS and A. B. BENSINGER attorneys for appellee.

(No brief in the record.)

WM. FURLONG, JOHN ROBERTS and FORCHT & FIELD for appellant.

STATEMENT OF FACTS AND CITATION OF AUTHORITIES.

1.   The answer of the City of Louisville, states affirmatively that the street was destroyed because of the negligence of the Louisville Gas Company in permitting its pipes to be in a leaky condition, thereby suffering gas to escape into the asphalt and destroying the asphalt.

Were there no proof at all in the case, this answer presents the question: Should the contractor answer in damages to the City for a collateral wrong of the Gas Company which he could not prevent after acceptance of the street by the City, and which the City could and should ahve prevented? Viewed with all the facts, circumstances and duties surrounding the parties when the contracts were executed, did the City contemplate that the contractor should answer for injury to the streets because of escaping gas from the pipes of the Gas Company.

2.   So much of the contracts that bear upon the question at issue is as follows: "And the work shall be done according to

plans and specifications on file in the engineer's office, all of which are made part hereof as if the same were herein inserted." The printed booklet which embraces the specifications and plans is filed as an exhibit in plaintiff's amended petition as a head line to Section 1 in specifications for Asphalt Streets. Following are 30 sections ending on page 17, then comes the word agreement, then follows plans. The AGREEMENT in the book is no part of the plans and specifications; so that as the contracts only make the plans and specifications on file as part of the contract, the "AGREEMENT" part of the book should be thrown out as it is no part of the contract.

3. A plan of a street is the delineation or design of the structure placed on paper or other substance representing the position and relative proportion of the different work (See Bouvier's Law Dictionary, page 333, volume 2, See 2 Bouvier's Law Dictionary, page 599; See Vol. 29 American and English Ency., page 869.)

So that the portion of the book covered by the word agreement being no part of the plans and specifications is not embraced by the contract, and even if it be embraced by the contract and ruled to cover everything, including injury from escaping gas, then the contract relieves the city, a public functionary, from discharge of public duty and it is therefore against public policy. (See Union Central Life Insurance Co. v. Spinks, 25 Ky. L. R., page 1205.)

4. The case at bar is unlike the case of Fehler v. Gosnell, 99 Ky., page 289. There an ordinance was made a part of the contract, that was a rule of action to which all persons must adhere and obey. The book on file is but the views of the City Engineer reduced to print. It is clear when the entire book is read even if it be taken as the contract that the parties meant that the work and material should be sufficient for a good street for ten years. (See Green River Asphalt Co. v. City of St. Louis, 87 S. W. R. page 985; City of Louisville v. Henderson, 5 Bush, page 250.)

OPINION BY JUDGE SETTLE—Affirming.

This action was brought by appellant in the Jefferson circuit court, chancery branch, first division, to restrain appellee from selling two bonds of $1,000 each, which had been deposited with it by appellant to secure the latter's compliance with a guaranty for repairs, as provided by certain contracts and accompa-

nying specifications for the reconstruction of several streets of the city of Louisville. The contracts and specifications were filed as exhibits with the petition. The former contain the stipulation that "the contractor, appellant, shall guaranty the faithful performance of the contract according to the specifications. The payment therein specified and the materials composing the same shall be kept in good repair for the period of 10 years from the completion of the work and the acceptance of the same. To protect the city as to the character of said work and the material used, and to compel the contractor to promptly make such repairs as may be needed, the contractor shall deposit bonds of the city of Louisville, or of the United States, amounting to 10 per cent. of the contract price of the entire work, with the city treasurer, who shall hold the same to be used as far as need be in making the necessary repairs in said work, and at the end of 10 years the unexpended balance, if any, shall be subject to the order of said contractor. * * * Should any repairs be needed on the work during the said period of 10 years, the contractor shall have notice in writing of such needed repairs. * * * Should he fail or refuse to begin said repair work within three days, the board of public works may have said repairs made, and charge same to said contractor; and, to pay the expenses of such repairs, may sell for cash as many of the bonds herein mentioned as may be necessary. Said sale to be made at public auction at such time and place as the board of public works may order, and notice of said sale to be given by one insertion in the paper doing the city printing and advertising."

It is alleged in the petition that, notwithstanding appellant's compliance with the contracts for reconstruction of the several streets therein named, appellee refused to return to it the bonds, and was wrong-

fully proceeding to sell them to pay the alleged cost of certain repairs on the streets which appellants had reconstructed, made necessary by injury to the streets from the leaking of gas from the mains of the Louisville Gas Company, and that its guaranty for repairs does not embrace such injuries to the streets as were thus caused, but only covers such as result from defects in its material and workmanship supplied in the work of reconstruction done by it. The answer of appellee admits the contracts alleged in the petition, and the deposit with it of the bonds in pursuance of the guaranty for repairs, but denies that the guaranty was intended to cover only the material and workmanship of the appellant. The answer contains the averments that before the expiration of the 10 years, during which the guaranty required appellant to keep the streets in repair, to wit, in the ninth year, the condition of the streets upon which appellant had worked became such that repairs were necessary; that it gave appellant notice thereof, and demanded that it make the necessary repairs, which it refused to do, and, by reason of such refusal, appellee was compelled to make the necessary repairs, which it did at the cost of $1,915.19, which sum it is entitled to out of the proceeds of the bonds deposited with it by appellant, and its authority to sell them for that purpose was conferred by its contract with appellant. The answer was made a counterclaim against appellant and a cross-petition against the gas company; judgment being asked against the former for the cost of the repairs mentioned, and a sale of the bonds to pay the amount thereof, and if not to be had, judgment against the gas company for that amount as damages for injury to the streets from the leaking gas mains which necessitated the repairs. The court below gave appellee judgment against appellant for the $1,915.19 claimed, directed a sale of the bonds to pay it, and

the costs of the action and dismissed appellee's cross-petition against the gas company. Appellant complains of the judgment, and asks for its reversal.

Manifestly the guarantee to repair is a part of the contract for the reconstruction of the streets. This is admitted by the pleadings, and is recognized by the act of appellant in depositing with appellee the bonds to make good the guaranty. As appellee had authority to contract for the reconstruction of its streets, and of repairs thereon, and the necessity for making the repairs arose within the 10 years during which appellant was to keep the streets in repair, as provided by the contract, it is equally apparent that the latter is responsible upon the guaranty for the cost of the necessary repairs made on the streets, unless the defects in the streets requiring them resulted from causes not covered by the guaranty. The specifications mentioned in that part of the contract quoted above are contained in a pamphlet, and they set out with great particularity how, when, and for what causes, the street repairs required of appellant for the 10 years after its completion of the work of reconstruction shall be made, and make the city engineer the sole judge of the necessity for such repairs; they also provide for the notice he is to give appellant to make the repairs and authorize him (the engineer) to make them if appellant fails to do so. The specifications also provide for the deposit by appellant of the bonds to make good the guaranty, and for the appropriation of them to pay the expenses of such street repairs as appellee may be compelled to make on account of appellant's failure to do so. The contention of appellant that the specifications are not a part of its contract with appellee is without support from the pleadings or proof, and is overthrown by the following clause of the contract, which declares: "That said work shall be done according to the plans and

specifications on file in the city engineer's office all of which are made part hereof as fully as if the same were herein inserted." We cannot adopt the suggestion of appellant's counsel that it is beyond the power of appellee to make such a contract as that entered into with appellant. The contract did not amount to an abrogation by appellee of a governmental function, or of its police power, nor did it relieve appellee of the duty to protect the lives and property of its citizens. Though it may lawfully contract for the repair of its highways, it does not thereby relieve itself of responsibility for an injury to the person or property of one of its citizens resulting from a defect in the streets or sidewalks, whether such defect was produced by leakage of gas or other cause, if it was known, or by the exercise of reasonable care could have been known to it in time to have repaired it. In the case of Fehler v. Gosnell, 99 Ky. 392, 18 Ky. Law Rep. 238, 35 S. W. 1125, a contract like the one under consideration was construed, which, though not enforceable against the abutting property owner, whose property was only liable for original construction, was held binding upon the city. In reaching this conclusion the court said: "The city had authority to contract for the repairs of streets, provided such contract was not made in violation of other requirements of the statute, and the contractor can recover of the city such portion of the contract price as was for repairs to the street." In Gosnell v. City of Louisville, 104 Ky. 201, 46 S. W. 722, 20 Ky. Law Rep. 520, it was said of a similar contract: "Upon the former appeal of this case, the court held that the contract sued on, not only embraced a contract for faithful work, but also a provision for repairs rendered necessary by other causes than defects in the contractor's work, and that these provisions caused the bids for the work to be higher than they would have been without such provisions, but that the

contractor was still entitled to recover except to the extent the defendant's assessments had been increased on that account. As to the increase thus caused, this court here held: "The city had authority to contract for the repairs of streets, provided such contracts were not made in violation of other requirements of the statute, and the contractor can recover of the city such portion of the contract price as was for repairs to the street.' " We are of opinion that the guaranty to repair, considering the language of the contract, and viewed in the light of the facts furnished by the record, includes repairs made necessary by leakage of gas from defective mains, as well as those required by defects in the work itself. The language of the contract does not relieve appellant from repairs made necessary by leaking of gas; on the contrary, repairs from that cause are such as were reasonably within the contemplation of the parties to the contract.

It appears from the evidence that among the forces which injuriously affect asphaltum streets is the leakage of gas from defective mains, and that when contractors undertake the construction of streets of asphalt, they take into consideration all the forces and elements that act or militate against the life of their construction, including the escape of gas from mains and sewers beneath the surface, and the uses to which the street may be put.

It further appears in evidence that there were gas mains under the streets reconstructed by appellant at the time the several contracts between it and appellee were entered into which fact, as well as the injurious effect on the streets of the leakage of gas, was known to the parties; and, this being true, it is to be presumed that the guaranty as to repairs contemplated the making of repairs resulting from such leakage, as well as those caused by the use of the streets from travel and from exposure to weather. According to

the evidence, any considerable leakage of gas from a main will cause rotting and decay of the asphalt, and the longer it continues the greater the injury to the street. Moreover, that such leakage is not always readily discoverable, and for this reason a gas company cannot, in every instance, stop it in time to prevent injury to the street. We think appellee's contention as to the meaning to be given the guaranty was substantially accepted by this court in Fehler v. Gosnell, and Gosnell v. City of Louisville supra. In the former it is said: "This provision in our judgment not only embraces a guaranty of faithful work, but also a provision for repairs rendered necessary by other causes than defects in the contractor's work. We are equally sure that these provisions requiring the withdrawal of capital from the contractor's business and its investment in bonds as the security for the making of repairs, of whose nature and extent he could not be certain, caused the bids for the work to be higher than they would have been without such provision." In the latter case, it is said in the opinion: "* * * It may be plausibly argued that the repairs secured by the deposit of bonds were, not only such as might result from accident or other extrinsic causes, but such repairs as might be rendered necessary by the material selected by the city for making the street, and the manner in which the city had by ordinance required the material to be used." In the case of Brown v. Jenks, 98 Cal. 10, 32 Pac. 701, the court, construing a somewhat similar provision, said: "Besides, it is for all repairs, including such as may result from unforeseen causes, or wanton abuse of the streets by individuals." We might be able to imagine a defect occurring in the streets, like one or more of those indicated by counsel for appellant, which in contemplation of the provision as to guaranty would not require of appellant repairs; but, we think, injury to

the street from the leakage of gas is undoubtedly one of the repairs required by the guaranty of appellant. It seems to be admitted that the repairs, which the city made 'because of the refusal of appellant to do so, were necessary, and there is no apparent disagreement between the parties as to the cost thereof, but there is a conflict of evidence as to whether the defects in the street requiring the repairs were caused by the leakage of gas, or the action of the weather, or natural wear and tear. Clearly, if they resulted from the latter causes, appellant would be without defense to the action; but, conceding that they resulted from the leakage of gas, it was, according to our construction of the guaranty, nevertheless the duty of appellant to make the repairs. Any other construction of the contract would, we think, be unwarranted by its language.

Judgment affirmed.