## Fidelity & Deposit Co. of Maryland v. Board of Councilmen of City of Frankfort.

(Decided March 23, 1934.)

WM. WARSHALL BULLITT, LEO T. WOLFORD, L. S. BLICK-ENSTAFF, and BRUCE & BULLITT and C. C. TURNER for appellant.

FRANK M. DAILEY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment under attack was rendered against the appellant, as surety on the bond of the Davis Contracting Company, which repaved Third street in Frankfort, under a contract with the city, in the year 1927. The verdict was returned under a peremptory instruction.

The first point submitted for a reversal of the judgment is that the appellant did not guarantee the maintenance of the street paving for the period of five years as claimed by the city. The contract of indemnity and guaranty of the faithful performance by the construction contractor of his undertaking is made up of several interlocking documents; the whole being quite elaborate and lengthy. The ordinance enacted by the city council on April 28, 1927, provided that certain designated streets should be "constructed, reconstructed and improved by paving * * * and by constructing, reconstructing and building curbs and gutters and storm water sewers and appurtenances upon and alongside streets of such material as the Common Council may deem best. Such work to be accomplished, done and performed in accordance with survey, plans and specifications which are attached hereto, and which are hereby approved and adopted and made a part of this ordinance, and recorded as a part of same upon the ordinance book of the City."

That part of the ordinance relating to the bond to be executed by the contractor is as follows:

"Section 4. That the successful bidder shall execute bond to the City of Frankfort, Kentucky, in a sum with good and sufficient surety, equal to one hundred per cent of the estimated contract prices, to be approved by the City Council for the faithful performance of his contract, and further conditioned that said construction shall be of such grade of workmanship and such quality of materials as to remain in a substantially good condition for a period of five years, after its acceptance; and further that he will indemnify the said City against any and all loss sustained by reason of his negligence or defective construction, and the contractor shall within thirty days begin his work under said contract and shall complete the same without delay."

The Davis Contracting Company, being the successful bidder, made a contract with the city to do the work according to the certain plans and specifications prepared by the city, which were then on file, as stated, in the office of the city clerk, and in accordance with the foregoing ordinance specifically mentioned and identified in the contract. The stipulation is repeated in the contract in this language:

"The said work shall be done according to the provisions of said Ordinance and plans and specifications, all of which are made part thereof as fully as if the same was herein inserted; at his own cost and expense in a first-class workmanlike manner and according to the best of his art and ability, and in accordance with the plans and specifications hereinbefore referred to and such detailed instructions as may be given by the Engineer during the progress of the work."

The specifications were elaborate and voluminous. They minutely provided, among other things, for the excavation for storm sewers and particularly for the backfilling of the trenches. Under the title "Specifications for Sheet Asphalt Pavement," section 10 of the specifications is sub-captioned, with underscoring, "Maintenance and Guarantee—The Period of Guarantee Shall be Five [5] Years," and is as follows:

"During the period for which the pavement is guaranteed by the Contractor he shall maintain in order the grade and surface of all the aforesaid

work or material or from any rotting, crumbling or disintegration of the paving materials. He shall make such repairs as may be necessary to maintain a pavement which shall have a contour substantially conforming to that of the pavement as first laid and free from depressions of any kind exceeding one-half [½] inch in depth as measured between any two points four [4] feet apart on a line conforming substantially to the original contour of the pavement, and which shall be free from cracks or depressions showing disintegration of the surface mixture or defects in the foundation. The Contractor shall make good any settlement due to improperly prepared or defective sub-grade, including sunken places on account of any trenches or holes made in the street by any corporation or private party prior to the laying of the pavement. All repairs required to be made by the Contractor during the guarantee period shall be made with mixtures similar and equal to and laid in the manner described herein for the construction of the original pavement.''

The foregoing is the contract for the work so far as it is pertinent to the issues of this case, and is the undertaking of the Davis Contracting Company, the faithful performance of which was assured by the appellant as surety. The bond dated June 25, 1927, declared that the principal and surety were bound to the city of Frankfort in the sum of $19,545.75; that, whereas the principal had contracted with the city on June 21, 1927, ''now, therefore, the condition of the foregoing obligation is such that if the said Davis Contracting Company, Inc., Principal, shall well and duly perform the said contract and each and every provision thereof on their part to be performed under the said contract, plans and specifications and all of the terms and conditions therein contained in the manner and within the time prescribed in said contract, and any period of extension that may be granted by the City of Frankfort, Ky., and any and all such changes, alterations or modifications of said contract as are permitted by the terms of said contract and specifications, then this obligation shall be void, otherwise in full force and effect.''

The project was completed and accepted by the city in November, 1927, when the assessments were made against the abutting property owners for the cost.

In reconstructing Third street it was found necessary to replace a storm sewer, and this necessitated the excavation of a trench from eight to ten feet deep. It was refilled, apparently in a proper way, and the paving of asphalt on a crushed stone base was laid. Due to the settlement of the trench fill, in about a year the paving sank in several places, some of them as much as eight inches. Complaint was made to the contractor and notices given it and the surety company to remedy the defects, but nothing was done by them. On June 24, 1929, a resolution was adopted by the city council calling upon the Davis Contracting Company and the appellant, as its surety, to make immediate repairs of this defect in the street. Shortly thereafter it was inspected by a represenative of the bonding company. Still nothing was done. So in the latter part of October, 1930, after receiving bids, the city let a contract to another company for the repair of the street at a cost of $2,413.40, which was paid upon completion by the city. For that sum judgment was asked and rendered against the surety company alone; it appearing that the contracting company had become insolvent.

As stated, the appellant is claiming that it was not obligated for the maintenance of the street. The basis of the argument is that the provision for maintenance was not a part of the paving contract, but was hidden away as an obscure paragraph of the specifications. It will be observed that the ordinance required that the bond to be executed by the contractor should be conditioned that the work will be such as "to remain in a substantial good condition for a period of five [5] years after its acceptance." The ordinance and contract both clearly and emphatically made the entire plans and specifications a part of the obligations assumed by the contractor. Since the contract must be construed as a whole, effect must be given writings incorporated by reference. The better evidence is that the subsidence of the paving over the sewer was due to improper filling, which made an insecure base, although there is evidence that the sagging was due to the defects in the specifications prepared by the city's engineer according to which the work was done. It is, of course, admitted that the contractor had failed to maintain the streets in a manner provided for in the specifications. It is argued that such a contractual provision as to the maintenance was extraneous and entirely out of place in a

volume purporting to contain only specifications, that such paper was intended only to define how the work was to be done, and that one could not be expected to find in such specifications any affirmative undertaking such as the maintenance of the completed structure. The appellant takes the position that this comes under the rule of interpretation that a writing incorporated in a contract for a particular purpose is made a part of that contract for that particular purpose only. In respect to building contracts, that rule is thus stated in 9 C. J. 709:

> "Plans and specifications, if not contained in the contract itself, but referred to therein or annexed thereto, must be construed therewith, when identified, and parol evidence is admissible for the purpose of such identification, unless the reference is a false one. But where the plans and specifications are referred to for a specific purpose only, they become a part of the contract for such purpose only, and should be treated as irrelevant for all other purposes."

But can it be said here that the specifications were made a part of this contract by reference for any specific purpose only? We have called attention to the provision of the ordinance that the work should be of such character that the street would remain in substantially good condition for a period of five years after its acceptance, and that the ordinance and the contract made these specifications in their entirety an integral part of the contract covering the work. The whole agreement clearly contemplated that the contractor should build a street that would last five years, and, if it did not stand up under ordinary use, then that the contractor would remedy the faults and repair the breaks. The provision as to maintenance is not obscure. It is captioned to attract attention, and comprises a full page of the document. Ignorance of the surety company of one provision in the contract it was guaranteeing would be performed cannot excuse the performance of its own covenant any more than could ignorance of any other provision therein. The maintenance of the street was assumed by the contractor, and is manifestly within the guaranty of the appellant. Barber Asphalt Paving Company v. City of Louisville, 123 Ky. 687, 97 S. W. 31, 29 Ky. Law Rep. 1255, 9 L. R. A. (N. S.) 154.

The second point urged for reversal is that the city and not the contractor is responsible for the failure of the pavement because it made the performance of the contract of maintenance more difficult and expensive. It appears that, after the contractor had removed the old street surface, such conditions were disclosed as made it advisable to put in a new sewer, and that was done. This, it is said, created a condition which caused the paving to sag, although it was constructed in exact accordance with the specifications and the verbal instructions of the city's engineer. The ordinance contemplated the construction of sewers in this improvement project. The contract made with the Davis Contracting Company provided that it should build sewers on a unit of work basis, and the plans and specifications described that sewer construction work in detail. Moreover, the contract specified that the work was to be done in accordance with the plans and specifications "and such detailed instructions as may be given by the engineer during the progress of the work." The specifications provided that:

"The Owner or the Engineer shall have the power to vary, extend, increase or diminish the quantity, to change the order or type of work, or dispense with a portion thereof at any time, without impairing the contract, without changing the unit prices to be paid, without in any way impairing the bond or releasing the sureties thereof, and no payment of any kind will be made on account of work not done."

Thus some leeway was contemplated, and we cannot accede to the proposition that there was a change in the contract with the principal in the bond that would release the surety or any conduct on the part of the city that hindered or prevented or made more difficult the performance of the contract by the other party thereto.

The third point raised is that it was error to adjudge the city the full amount paid by it to have the street repaired. If we regard evidence of comparative costs for similar work in Louisville, then there was some little conflict in the evidence as to the reasonableness of the prices paid. Slightly thicker stone base was put over the refilled and newly tamped trenches than had been put in by the original contractor under its contract. The city had called upon the contractor and the surety to do this work and gave them every opportunity

to do it, and they refused. The city had the right to have the work done. It proceeded to do so after advertising for bids and letting the contract to the lowest bidder. That was all the derelict parties were entitled to. The difference in the thickness of base was not material and was only such as was necessary to meet the situation. The difference in cost was negligible. Nor can we find merit in the claim that it was improper to charge $200 monthly salary of the engineer which the city employed to supervise this work to its cost. It appears that the total salary so paid was $250, but the services of the engineer included the supervision of other work being done in the city. But it does not appear that the $200 was an improper allocation to this work.

Perceiving no error, the judgment is affirmed.