## White Const. Co. et al. v. City of Madisonville.

(Decided Oct. 7, 1938.)

(Rehearing Denied Dec. 9, 1938.)

418

GORDON, GORDON & MOORE and E. M. NICHOLS for appellants.

WADDILL, LAFFOON & WADDILL and H. F. S. BAILEY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In the year 1925, Madisonville, Kentucky, a city of the Fourth Class, adopted the usual ordinances and resolutions required by the statutes for the improvement of certain streets in the said city and duly advertised the work for contract bids. The appellant, White Construction Company, became the successful bidder, and on June 22, 1925, a contract was entered into between the appellant and appellee, city, for the improvement of the streets by appellant in accordance with the plans, specifications, etc., as set out in the ordinances adopted by the city authorizing the said improvements. On the same day, appellant executed to appellee two bonds, one being the usual contract bond conditioned that appellee would perform the construction and completion of said improvements as provided in the ordinance, and the other a maintenance bond, which reads as follows:

"Maintenance Bond

"Know All Men by These Presents:

"That we, the White Construction Company, of Chicago, Illinois, hereinafter termed the Principal, and United States Fidelity and Guaranty Company of Baltimore, Maryland, a bonding and surety Company authorized to do business in the Commonwealth of Kentucky, hereby undertake to and with the City of Madisonville, Kentucky, to guarantee for a period of five years from and after the date of its final acceptance of street improvement provided for in the ordinance of said City passed by its City Council May 15, 1925, and published in the Daily Messenger of May 16, 1925, in the terms of the plans and specifications for said improvement:

"And we do specifically warrant and guarantee that in the event one-half inch or more be worn from any part of the surface of any street or streets constructed under said ordinance by the

Principal before or at the time of expiration of five years from the date of final acceptance of said improvement, then in that event the entire portion of the surface of such street or streets, so worn shall be replaced by the Principal at its expense with new material accepted and approved by the Mayor and City Council, or their nominee, and the City Engineer, which material shall be placed on the street or streets, or portion of streets, in accordance with said specifications; and we further undertake that in the event ten per centum of the surface of any street or streets require patching by reason of holes worn or sunken or cracked therein, then the entire street or streets where such deficiencies occur shall be entirely resurfaced throughout their extent with material of the same class as originally constructed in accordance with said specifications of said material, and in a manner acceptable to the City and the City Engineer;

"The obligations of this guarantee bond shall be deemed to be fulfilled at the end of five years from the final acceptance of said improvement by the City; provided that at that time all parts of every street or streets shall be in good surface as required by said specifications and the thickness and condition of the surface material be as required by said plans and specifications for said street improvement."

In September, 1930, appellee brought this suit in the Hopkins circuit court alleging a breach of the maintenance bond—alleging that at that time and for several years last past and within said five-year period the streets have not been in good condition or in good surface and that there has been on each and all of said streets more than one-half inch worn from the surface of same and that the entire portion of said surface needs replacing with new material, according to plans and specifications; that more than 10% of the surface of each and all of said streets requires patching by reason of holes worn, and further alleged many other similar defects and violations, and prayed for judgment against the defendants, that they be required promptly to comply with their maintenance bond and make such repairs at once as will restore said streets to the conditions required by said bond, and if they decline to do so, or there shall be any material delay in doing so, then for

such sums in damages as will fairly compensate plaintiff for the reasonable cost in making such repairs.

Appellants filed their answer denying the allegations of the petition and pleaded affirmatively its contract and contract bond, alleging that the work was done in accordance with the plans and specifications and that while said work was in progress the city was constantly represented at every stage of the preparation of the base or foundation, and directed, approved and accepted the preparation of the base of said improvement before any surface material was placed thereon, and likewise inspected and supervised the construction of the surface on the foundation and also accepted the methods and means employed at every stage of the construction by defendant contractor and approved and accepted the same.

It is admitted in the answer that there are "haircracks" in many places in the street and the foundation had shrunk, causing the surface to deteriorate, but allege that same was not caused by any fault of the contractor but due to the foundation, and approved by the city. It is further alleged that the terms of the maintenance bond as executed are much broader than the provisions of the plans and specifications therefor, and placed upon the contractor a much more onerous burden than the plans demand, and the extra-legal terms are void and unenforcible.

The city filed its reply denying the affirmative allegations of the answer and pleaded affirmatively certain provisions of the specifications, quoting therefrom as follows: "Bidders are expected to examine carefully the site of the plans for the proposed work, and they shall satisfy themselves as to the character, quantity and nature of the work to be done," and that the contractor before making his bid did carefully examine the site and plans for the proposed work and did satisfy himself as to the character, quantity and nature of the work to be done, and at the time the defendants entered into the conract and executed the maintenance bond, they were fully aware of the site of and plans for the proposed work and of the character and the nature of same.

By subsequent pleadings the issues were made, the evidence taken and the court entered the following separate finding of facts and law:

"The court, as a matter of fact finds that the defendant, White Construction Company, contracted with the plaintiff to construct the streets named in the petition, according to the plans and specifications found in the record; that no officer, or agent of the plaintiff, was authorized to deviate from the plans and specifications except, the Mayor of Madisonville or the Engineer in charge of the work, and that the authorized changes or deviation by these officers, or either of them was required to be in writing; that no such changes, or deviation from the plans and specifications, was ever authorized in writing by either the Mayor or Engineer in charge of the work; that said work in many places, and on various streets, was not executed according to the plans and specifications; that the base of many of said streets was inadequate and not as required by the plans and specifications; that a maintenance bond was executed by the defendant, The White Construction Company, covering the work constructed, under the contract, for a period of five years from the acceptance of the respective streets, with its co-defendant, United States Fidelity and Guaranty Company, as its surety, on said maintenance bond; that said bond covered said improvements on each and all of the streets, sued about, in all respects, including the base thereof; according to the plans and specifications, and the ordinance under which said work was done, and according to the terms of said bond; that by failure to construct said streets, and the base thereof, according to the plans and specifications, the plaintiff was damaged within the time limit of said bond as the reasonable cost of repairing said streets, immediately after the defects thereof appears, in the sum of Twenty-five ($25,000.00) Thousand Dollars.

"The Court further finds and concludes from these facts as a matter of law, that the plaintiff has been damaged to the extent of Twenty-Five ($25,-000.00) Thousand Dollars, and that it is entitled to judgment in that sum with the cost of this action."

Judgment was entered in favor of plaintiff in the sum of $25,000 with interest from the date of entry thereof and costs of the action. This appeal follows.

One of the grounds of reversal relied on is that the

evidence of appellee city fails to impose any liability upon the contractor under the terms of the plans and bond. According to the evidence of the Mayor and a number of other witnesses for appellee, the streets were in bad condition and contained many defects along the line alleged in the petition. Appellants do not seriously contend that the evidence is insufficient to show that the condition of the streets was not as guaranteed by the maintenance bond, but seek to avoid liability on the ground that the whole work, foundation and surfacing was done under the supervision of the representatives of the city and done in conformity with the plans and specifications and accepted and approved by the city, and for that reason appellants are not liable on the maintenance bond. Kentucky Statutes, Sec. 3571, authorizes the city to require a guarantee of the work for such time as the board of council may require in addition to the contract bond, that the improvements shall be made according to the plans and specifications. The fact that the city by its representatives supervised the work and accepted it is not conclusive as against the defective material and workmanship as guaranteed by the maintenance bond. It is common knowledge that there may be latent defects in such improvements which cannot be guarded against by casual examination of the work for the purpose of accepting or rejecting it, and the purpose of the five-year guaranty or maintenance bond is authorized to guard against such latent defects. If the contract bond and the acceptance by the city of the work be conclusive against defects appearing within the five-year period, there would be no necessity for the maintenance bond. It is insisted for appellants and pointed out in the evidence of one of its witnesses, that the maintenance bond differs from the specifications in that, the specifications upon which the contractor based its bid, the condition of guaranty is that "should 10% of the surface of the street or streets require patching by reason of holes worn therein, then the entire street or streets be resurfaced," whereas the maintenance bond which the city prepared for execution required that "in the event 10 per centum of the surface of any street or streets require patching by reason of holes worn or sunken or cracked therein, then the entire street or streets where such deficiency occurred shall be entirely resurfaced. In other words, instead of 'holes worn therein' (as stated in the specifications) there are

inserted in the maintenance bond the additional words 'or sunken or cracked' after the word 'worn.' "

This is the only variance between the specifications and maintenance bonds pointed out by defendants in their evidence. However, in view of other language used in the maintenance bond, and keeping in mind the purpose of same, we think it is broad enough to cover any and all defects occurring within the five-year period due to defective material or workmanship, including the foundation which is a part of the "workmanship," and the slight difference in the wording of the specifications and the maintenance bond is not material. This is particularly true in view of the fact that the contract, the contract bond and maintenance bond were all executed on the same day, which of course was before the work was done. It will be presumed that the appellants read the maintenance bond and knew of the slight difference, if any, in the verbiage of it and the specifications, at the time they executed it, and failing to then raise the question and having voluntarily executed it, they are bound by the terms thereof. It is further insisted for appellants that the defects in the streets in question, if any, are due solely to unwise and defective plans for which the contractor is not responsible. But as pointed out in the reply, quoted from the specifications, bidders were expected to examine carefully the site of the plans for the proposed work and satisfy themselves as to the character and nature of the same. The alleged defective specifications insisted on for appellants is that there were old water pipes under some of the streets in question which pipes were left there and the foundation constructed on or over them and that the seepage of water from these pipes moistened the foundation and caused it to break down in many places, resulting in the defects complained of by the city. It is not contended that the defendants did not know of these pipes or the condition of the ground upon which the streets were constructed, nor is it shown that they could not have known of same by the exercise of ordinary care. That part of the specifications quoted in the reply and referred to above was sufficient to put defendants on guard in that, they were to be judge of the character and nature of the work, which, as we have already stated, included the foundation, and, having constructed the streets upon such foundation and having guaranteed the integrity and maintenance of same by the execution of the mainte-

nance bond, they cannot now interpose the weakness of the foundation as a defense to the maintenance bond.

Appellants rely upon the case of City of Louisville v. L. R. Figg Company et al., 152 Ky. 541, 153 S. W. 763. That case is bottomed upon a clause in the specifications made part of the contract, as follows:

"The party of the second part hereby guarantees the work done under this contract, and the materials used in the construction of the same are free from defects or flaws, and this guaranty is for a term of five years from and after the acceptance of the work by the board of public works. It is hereby especially agreed and understood that this guaranty shall not include any repairs made necessary by any cause or causes other than defective work or materials in the construction of the improvement."

The maintenance bond involved in the case at bar is much broader in its scope than the guaranty quoted above in the case, supra. The bond is not specifically restricted to flaws or defects in materials used, but as we have already pointed out, it includes such defects set out therein as may occur within five years. It is true that the bond provides that the material placed on the streets shall be in accordance with the specifications which include the foundation as well as surface material and includes defects which may occur within the five-year period as result of a faulty or insufficient foundation as well as surface material.

In Barber Asphalt Paving Company v. City of Louisville, 123 Ky. 687, 97 S. W. 31, 29 Ky. Law Rep. 1255, 9 L. R. A., N. S., 154, it is held that a guaranty by a contractor to keep a street in repair includes repairs made necessary by leakage of gas from defective mains as well as those required by defects in the work itself, and especially is this contemplated when streets are paved with asphalt.

In view of the broad scope of the maintenance bond involved in the present case, we think the case supra is conclusive against appellant's contention that the defects in the streets resulted from leakage of the old water pipes under the foundation thereof.

Conceding, arguendo, that the representatives of the city were present and knew of the old water pipes under the foundation, it is not shown, as pointed out in

the chancellor's findings of fact, that the mayor or other official of the city authorized the inspectors or representatives of the city to consent that the streets be constructed upon a faulty foundation, which would have been a deviation from the plans and specifications.

However, if it be conceded that the maintenance bond in question was a guaranty only against defects resulting from faulty workmanship or material, we find upon examination of the evidence for ourselves that it is sufficient to sustain the finding of the chancellor that the material used and the manner of work was not in accordance with the specifications and contract bond, as well as the maintenance bond. A number of witnesses for the city testified that the asphalt or surface covering was not of the thickness required by the specifications, and resulted in a worn condition of the surface of the street. Referring further to the evidence and, without entering into a detailed discussion or resume of same, it is sufficient to say that we find it sufficient to support the chancellor's finding of facts in all respects.

It is insisted that certain evidence heard for the city was incompetent. Conceding, without deciding, that there might be some incompetent evidence in the record, yet upon the whole of the evidence we conclude that there is sufficient competent evidence to sustain the chancellor. We also concur with the chancellor in his finding of law.

Wherefore, the judgment is affirmed.