[Civ. No. 20622.   Second Dist., Div. Three.   Apr. 7, 1955.]

SETH OBERG et al., Appellants, v. THE CITY OF LOS ANGELES, Respondent.

Danielson & St. Clair for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Alfred E. Rogers, Deputy City Attorney, for Respondent.

VALLEE, J.—Appeal by plaintiffs from a judgment in an action for the value of labor and material alleged to be extras furnished under a construction contract.

On September 29, 1950, plaintiffs entered into a contract with the city of Los Angeles for the construction of a subway and appurtenant work on Sepulveda Boulevard. During the course of construction a dispute arose as to whether plaintiffs were required by the contract to install membrane waterproofing over all concrete joints in contact with fill other than expansion joints. The city asserted plaintiffs were required to do so by virtue of section 158 of specifications 138, being general specifications adopted by the city council in 1941. Plaintiffs claimed they were not required to install any membrane waterproofing because the contract designated and required the installation of rubber waterstop and because membrane waterproofing was not designated in the contract nor shown on the plans or set forth in the specifications adopted by the board of public works in 1950 providing for the construction. Pursuant to a change order issued by the city, plaintiffs installed membrane waterproofing as directed, the parties agreeing that all rights of plaintiffs to compensation for the installation of membrance waterproofing were reserved.

Membrane waterproofing is a seal composed of asphalt and fabric which is sometimes placed over the edges of concrete joints to prevent seepage. Rubber waterstop is a piece of rubber that is placed in the first section of concrete being

poured and when the next section is poured the concrete seals it, leaving the rubber waterstop as a barrier to water seepage at the joint. Membrane waterproofing and rubber waterstop serve the same purpose. Good construction practice does not require membrance waterproofing and rubber waterstop at the same joint.

After completion of the contract plaintiffs duly filed a claim with the city of $15,412.76, based on the cost to them of installing the membrance waterproofing and reduction in the contract price charged against them by reason of elimination of some membrane waterproofing. The claim was denied and this action filed.

The court concluded that plaintiffs were not required by the contract to install membrance waterproofing over expansion joints, at which rubber waterstops were required and installed; plaintiffs were required by the contract to install 51,142 square feet of membrane waterproofing; plaintiffs were entitled to a credit on the total contract of $3,102.45, being the agreed price for 12,578.5 square feet of membrane waterproofing which, at the direction of the city, was not installed "as required by the original contract." Judgment was for plaintiffs for $1,355.31. Plaintiffs appeal.

Plaintiffs contend that the contract did not require them to install any membrane waterproofing and that the installation thereof at the demand of the city was an extra for which they are entitled to extra compensation.

The question is whether plaintiffs were required by the contract to install membrane waterproofing over all concrete joints of the structure in contact with fill other than expansion joints. The parties agree that the interpretation of the contract presents a question of law. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) The contract consisted of the plans, the special specifications, Specifications 138, and the executed contract.

On August 16, 1950, the board of public works of the city adopted plans and specifications for the construction of a subway and appurtenant work on Sepulveda Boulevard. The plans did not show membrane waterproofing; they did show rubber waterstop. This statement appeared on the plans:

"Materials and workmanship shall conform to City of Los Angeles Specification No. 138, and the specifications accompanying this set of plans."

The specifications accompanying the plans, called the "special specifications," contained these provisions:

"Whenever the word 'specifications' is used herein and in the Instructions to Bidders, Bonds, Affidavit, Published Notice Inviting Bids, and in the Contract it means these specifications together with all provisions not in conflict herewith, contained in Specifications No. 138 as amended to date of 'Notice Inviting Bids' on file in the office of the City Clerk, which Specifications No. 138 are hereby made a part hereof as though fully set forth herein.

"The intent of the plans and specifications is to prescribe a complete work or improvement which the Contractor undertakes to do in full compliance with the plans, the specifications, the special provisions, proposal, and contract. The Contractor shall do all work including such additional, extra, and incidental work as may be considered necessary to complete the project in a satisfactory and acceptable manner, as provided in the plans, proposal, and contract. He shall furnish, unless otherwise provided in the specifications, special provisions or contract, all materials, equipment, tools, labor, and incidentals necessary to prosecute the completion of the work.

"These specifications, the plans, special provisions, and all supplementary plans and documents are essential parts of the contract, and a requirement occurring in one is just as binding as though occurring in all. They are intended to be cooperative to describe and provide for a complete work. In case of discrepancy, figured dimensions, unless obviously incorrect, shall govern over scaled dimensions. Plans shall govern over specifications and special provisions shall govern over both plans and specifications."

Under the title "Special Provisions" the following appeared:

"All work done and materials furnished shall be in conformity with these specifications, Specifications No. 138 as amended to date of 'Notice Inviting Bids,' the above mentioned plans and all plans mentioned thereon."

Under the heading "Expansion Joints," the "special specifications" provided that:

"Where shown on the plans, expansions joints shall be formed as per Specifications No. 138. All such joints shall be filled with expansion joint filler material as specified in Specifications No. 138. Each such joint shall be sealed, using a continuous rubber waterstop throughout the lengths called for on the plans."

The section then went into detail as to the construction and

installation of rubber waterstops. There was no specific mention of membrane waterproofing in the special specifications.

Section 18 of Specifications 138 provided:

"In the event of there being certain provisions in the special specifications, the plans, or the standard plans for the work which may modify or be contrary to these Specifications, the particular provisions of the special specifications and plans shall supersede and control these specifications in the following order of precedence:

"First, plans.

"Second, special specifications.

"Third, standard plans, except where definitely provided otherwise herein, and except that these Specifications shall supersede and control any specifications referred to on the standard plans."

Section 77 of Specifications 138 specified the materials of which membrane waterproofing should consist.[1]

Section 158 of Specifications 138 was in Part XII titled "Waterproofing of Structures." In pertinent part it read:

"(a) *General Requirements.* Materials for membrane waterproofing shall conform to the requirements of Sec. 77, hereof.

"Forms for areas and angles to be waterproofed shall conform to Sec. 121, hereof.

"Concrete surfaces which are to be waterproofed shall be smooth and free from projections and cavities which might injure the membrane. The surface of the concrete shall be dry and shall be thoroughly cleaned of dust and loose materials. No waterproofing shall be done in wet weather.

"(b) *Surfaces to be Waterproofed.* A strip of membrane waterproofing 18 inches wide shall be placed over the edges of all construction, contraction, and expansion joints (except those of sewers and storm drains) which will be in contact

---

[1]Section 77 reads: "MEMBRANE WATERPROOFING

"(a) *Coatings and Fabric.* The prime coat shall be of bituminous type of sealing compound. [Sec. 36, hereof]

"The asphalt coatings shall be Type B asphalt complying with Std. Spec. D 449-37T, A.S.T.M.

"The fabric shall be woven cotton fabric complying with Std. Spec. D 173-40T, A.S.T.M., except that the rolls of treated cotton fabric may be wound on cardboard cores not less than one inch in diameter, and except that the moisture content of the fabric based on the net weight shall not exceed 2 percent.

"Samples of the asphalt and fabric for testing shall be taken by the Engineer not less than 3 days before the material is first applied and at intervals thereafter, as the Engineer may require.

"(b) *Asphalt Plastic Cement* shall comply with Federal Specifications SS-C-153, except that it may have either asphalt or coal tar base."

with fill, including the joints between the footings and the members resting upon the footings, but not including the vertical joints in the footings themselves, unless so indicated on the plans.

"A strip of membrane waterproofing 24 inches wide shall be placed over the side or sides of joints of abutment and footing hinges and keys of arches and rigid frames which will be in contact with fill, or as indicated on the plans.

"Membrane waterproofing shall be applied to all other surfaces indicated on the plans or specified herein or in the special specifications."

Section 158 then specified the quality and manner of application of membrane waterproofing. There was no mention of rubber waterstop in specifications 138.

The city invited bids for the proposed construction. The notice inviting bids stated that the work was to be performed in "strict conformity with specifications therefor, which said specifications were duly adopted by the said Board of Public Works at its meeting of *Aug. 16*, 1950, . . . Reference is hereby made to the said specifications for full particulars and description of the said work." Under the General Information heading of "Instructions to Bidders," the following provision is found:

"The said work must be done in strict conformity with specifications and/or plans therefor, which specifications and/or plans were adopted by the Board of Public Works of said City on *Aug 16 1950*."

In the schedule of quantities in the "Notice Inviting Bids" the city specified 49 different items of materials to be furnished and work to be performed. No item for the installation of membrane waterproofing was listed. Item number 8 provided "6,040 linear feet rubber waterstop, in place." The introduction to section 13, Schedule of Quantities, in part read:

"The scope of the work included in each item is more fully described in the special specifications included herein."

On the printed proposals for contractors to submit, following the schedule of work and prices and preceding the page on which the contractor signed, there appeared the following statement:

"All work done and materials furnished shall be in conformity with Specifications No. 138 as amended to date of 'Notice Inviting Bids,' the accompanying Specifications, and in further accordance with [certain plans]. . . ."

Plaintiffs' bid was accepted and on September 29, 1950 a contract was executed by plaintiffs and the city. The executed contract was an "item" contract whereby plaintiffs agreed to furnish materials and do certain units of work at specified unit prices. Article 1, Statement of Work and Compensation, provided that "The Contractor shall furnish all labor, material and equipment necessary for the construction of a subway and appurtenant work . . . as covered by Section 13 of the 'Instructions to Bidders,' at and for the following prices: . . . ." A schedule of 49 items of materials, work, and prices followed. Membrane waterproofing was not listed nor was any unit price specified for the cost of furnishing or installing it. A unit price was specified for furnishing and installing rubber waterstop. The executed contract then provided: "Said work to be performed strictly in accordance with the specifications, schedules and drawings, all of which are made a part hereof. . . ." Article 29 provided:

"DOCUMENTS WHICH CONSTITUTE A PART OF THIS CONTRACT. It is expressly agreed that the Instructions to Bidders, the Notice Inviting Bids, the Contractor's Proposal and the Specifications, all of which are on file in the office of the Board of Public Works, shall constitute a part of this contract and each of the parties hereto does hereby expressly covenant and agree to carry out and fully perform each and all of the provisions of said documents, upon its part to be performed, provided, however, that in the event of any conflict between any of the provisions of said documents and this instrument, the provisions of this instrument shall prevail."

Specifications 138 were not expressly mentioned in the contract, but they in turn were referred to in the other documents.

About a month after the execution of the contract representatives of the city presented a drawing to plaintiffs and asserted that plantiffs were required by section 158(b) of Specifications 138 to install a total of 52,190 square feet of membrane waterproofing over concrete joints. The drawing omitted any requirement of installation of membrane waterproofing over 27,110 square feet of concrete joints. The drawing also omitted 13,180 square fete of membrane waterproofing over certain joints and replaced the same with a different application of membrane waterproofing totaling 23,190 square feet. On February 20, 1951, the city issued Change Order No. 11, which was in accord with the drawing.

It required plaintiffs to install membrane waterproofing at certain joints and directed that it not be installed at certain other joints. The joints at which plaintiffs were directed to install membrane waterproofing were not expansion joints.

A controversy ensued between the parties. In accord with the direction of the city, plaintiffs, reserving their rights as to compensation, installed 38,563.5 square feet of membrane waterproofing for which they received no compensation as an extra. The contract was fully performed by plaintiffs and the work accepted by the city. The city deducted from the total amount paid plaintiffs the sum of $4,457.76 by reason of the omission of membrane waterproofing over certain concrete joints which the city had asserted was required by the contract.

A contract entered into by a governmental body and an individual is to be construed by the same rules which apply to the construction of contracts between private persons. (*Hensler* v. *City of Los Angeles,* 124 Cal.App.2d 71, 78 [268 P.2d 12]; *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 704 [235 P.2d 7]; *Brown* v. *Town of Sebastopol,* 153 Cal. 704, 709 [96 P. 363, 19 L.R.A.N.S. 178]; *Corporation of America* v. *Durham etc. Co.,* 50 Cal.App.2d 337, 340 [123 P.2d 81]; 18 Cal.Jur., 1000, § 272; 63 C.J.S. 853, § 1169.) In construing a contract, the primary object is to ascertain and give effect to the intention of the parties as it existed at the time of contracting. (Civ. Code, § 1636; *Hay* v. *Allen,* 112 Cal.App.2d 676, 681 [247 P.2d 94].) In accord with section 1638 of the Civil Code, the language of the contract, if clear and explicit and not conducive to an absurd result, must govern its interpretation. ''The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'' (Civ. Code, § 1641.)

In cases of uncertainty not removed by the rules stated in section 1635 to 1653 of the Civil Code, the language of the contract is to be interpreted most strongly against the party who caused the uncertainty to exist. As between a public officer or body and a private party, it is presumed that the uncertainty was caused by the private party. Section 1654 states:

''In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; except in a con-

tract between a public officer or body, as such, and a private party, in which it is presumed that all uncertainty was caused by the private party."

█ The restricted application of this section only comes into operation when, after application of the rules formulated in the sections preceding it, the uncertainty has not been removed. (*Eaton* v. *Thieme*, 15 Cal.App.2d 458, 464 [59 P.2d 638]; *Roy* v. *Salisbury*, 21 Cal.2d 176, 184 [130 P.2d 706]; *Cullen* v. *Sprigg*, 83 Cal. 56, 62-63 [23 P. 222].)

█ Effect must be given to writings incorporated into the contract by reference; hence the contract will be construed with respect to plans and specifications incorporated by reference. However, a plan of work is subsidiary to the contract, and the latter is controlling in the case of a discrepancy, and where the language thereof will permit, the specifications will be construed so as to uphold the validity of the contract. (*Fidelity & Deposit Co. of Maryland* v. *Board of Councilmen*, 253 Ky. 802 [70 S.W.2d 685]; *Utility Const. Co.* v. *Borough of South River*, 136 N.J.L. 633 [57 A.2d 389]; *Dean* v. *New York*, 167 N.Y. 13 [60 N.E. 236]; 63 C.J.S. 854, § 1169.)

█ We think it clear that plaintiffs were required under the contract to install membrane waterproofing. Membrane waterproofing was specified in section 158(b) of Specifications 138. Section 158(b) said that a strip of membrane waterproofing 18 inches wide should be placed over the edges of all construction, contraction, and expansion joints which would be in contact with fill. Expansion joints were not to be waterproofed with membrane waterproofing since, as provided in the special specifications, they were to be sealed with rubber waterstop and the special specifications controlled over Specifications 138. Section 158(b) also said that a strip of membrane waterproofing 24 inches wide should be placed over the side or sides of certain other joints which would be in contact with fill. Membrane waterproofing was not specified in either the plans or the special specifications, hence section 158(b) of Specifications 138 controlled. The statement repeated throughout the document that materials and workmanship "shall conform" or "shall be in conformity with" specifications 138 does not merely mean that materials should be of the quality shown in those specifications, as plaintiffs appear to argue; it means that materials shall comply with specifications 138, i.e., that the contractor shall install the materials specified in those specifications when they are not

specified in the plans or special specifications. Specifications 138 did more than merely specify standards of quality of materials and of work procedures where such materials and work procedures were required by the plans and special specifications. They distinctly and definitely said that membrane waterproofing should be placed over specified concrete joints which, in this case, included all concrete joints which would be in contact with fill except expansion joints.

There was no conflict between the special specifications and Specifications 138, as plaintiffs appear to contend. Rubber waterstop was not referred to in Specifications 138 hence it was necessary, since it was to be used on expansion joints, to say so in the special specifications. Membrane waterproofing was specified in Specifications 138, hence it was not necessary to say anything about it in the plans or special specifications.

The fact that the executed contract was an item or unit price contract does not militate against our conclusion. As we have observed, plaintiffs agreed to furnish all materials specified in Specifications 138 necessary to complete the structure. Item 6 of the executed contract read:

"Per cubic yard for Class 'F' Concrete for structures, including forms, in place."

Item 6 of the "Schedule of Quantities" in the Instructions to Bidders said:

"31,486 cubic yards Class 'F' concrete for structures in place, including forms."

The introduction of the "Schedule of Quantities" stated that the 49 items of quantities were approximate only, to be used by the city for the purpose of comparing bids, and continued:

"The scope of the work included in each item is more fully described in the special specifications included herein."

The special specifications, in turn, made Specifications 138 a part thereof when not in conflict. Section 27 of the special specifications covered in detail the composition of Class "F" concrete and concrete construction. It said:

"The price paid for cubic yard of concrete in place shall include full compensation for furnishing all labor, materials, tools and equipment and doing all work involved in furnishing material and constructing of forms and falsework, of expansion joints, excepting rubber water stops, of weepers and pouring and finishing concrete as shown on the plans and specified in this section."

Section 29 provided that expansion joints were to be sealed with rubber waterstop and:

"The cost of all material, labor and equipment required to conform to the provisions of this section, except furnishing and installing rubber waterstops, shall be considered to be included in the price paid per cubic foot of concrete and no additional allowance will be made therefor."

The cost of furnishing and installing rubber waterstops was provided for and was a separate item in the Schedule of Quantities. Section 158 of Specifications 138 provided for membrane waterproofing of all "concrete" surfaces that were to be waterproofed.

Under section 158 of Specifications 138 all joints in contact with fill, including expansion joints, would have to have been waterproofed with membrane waterproofing but since expansion joints were specifically excepted and were to be sealed with waterstop, the cost of waterproofing all other joints was included in the cost paid per cubic foot of concrete. Construing the documents as one, it appears to be manifest that membrane waterproofing was included in the executed contract.

Plaintiffs undertook to provide all materials necessary to complete the structure in full compliance with the plans and specifications, which included Specifications 138, and obligated themselves to install membrane waterproofing. Membrane waterproofing was not an extra and plaintiffs were not entitled to extra compensation for installing it.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied May 4, 1955.